CITY OF PROVIDENCE et al.

v.

The EMPLOYEE RETIREMENT BOARD OF the CITY OF PROVIDENCE et al.

Charles R. Mansolillo et al.

v.

The Employee Retirement Board of the City of Providence et al.

Nos. 96-265-Appeal, 96-424-Appeal.

Supreme Court of Rhode Island.

April 3, 2000.

Richard Riendeau, Providence, for Plaintiff City of Providence.

R. Kelly Sheridan, for Plaintiff Providence City Council.

Richard A. Skolnik, Patrick J. Quinlan, Donald S. Iannazzi, Robert S. Parker, Providence, Scott Partington, Pawtucket, for Defendant Employee Retirement Board.

Thomas J. Fay, Amato A. Deluca, Providence, for IAFF, Local 799.

Fred T. Polacek, Providence, for Defendant Lodge No. 3.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

These two cases, consolidated here for purposes of appeal, concern two separate final judgments entered in the Superior Court by different trial justices.[1]

In the first appeal, No. 96–265–A., one of the plaintiffs, the City of Providence, joined by one of the defendants in that case, the Providence city treasurer, appeals from a November 27, 1996, final judgment entered by Israel, J., denying their Super.R.Civ.P. 60(b)(4) motions to vacate a December 18, 1991, consent judgment (hereinafter, "the consent judgment") entered in Superior Court civil action PC 90–2119.

In the second appeal, No. 96–424–A., all the parties cross-appeal from a final judgment entered on November 12, 1998, in Superior Court civil action PC 93–5277, by Silverstein, J. The kaleidoscopic chronology of these protracted cases requires that we first unravel from that chronology what we perceive to be the actual and dispositive issues presented in each appeal. We take up first, the city council and city treasurer's appeal from the Superior Court judgment entered in PC 90–2119. In the course of doing so, we will make reference when necessary to certain relevant facts that are part of PC 93–5277, the second and consolidated appeal presented for our review.

## I

### No. 96–265–Appeal (PC 90–2119)

At a meeting of the Providence Employee Retirement Board (retirement board)

---

1. Rule 54 of the Superior Court Rules of Civil Procedure defines judgment to include "a decree and any order from which an appeal lies." In PC 90–2119, the judgment was in the form of an order.

held on December 6, 1989, the retirement board voted to approve a variety of retirement benefits for both Class A and Class B city employees, including various cost of living adjustments (COLAS).[2] That action and vote (hereinafter, the COLA vote) served as the epicenter for the imbroglio that later would develop between the city council and the city retirement board, which in turn produced city council Resolution No. 90–138, on April 6, 1990, and which eventually erupted into Superior Court civil action PC 90–2119.

In PC 90–2119, the City of Providence, as a party plaintiff, had sought declaratory relief to determine the validity of the December 6, 1989, pension action taken by the retirement board. The city treasurer was a named defendant. That action, we note, had been commenced, pursuant to City Council Resolution No. 90–138, by vote of "at least a ⅔ vote of all the Members of said City Council" and was intended to be "in the overall best interest of the City of Providence." In aid of that resolution, the city council voted to retain private counsel who earlier had been engaged to represent the City of Providence, and to compensate that private counsel upon submission of "his bills for payment to the

Chairman of the [city council's] Finance Committee, or his designee." Subsequently, pursuant to the resolution, attorney Joseph V. Cavanagh (Cavanagh) was retained as the private counsel. Nineteen days later on April 25, 1990, Cavanagh filed the city's complaint, PC 90–2119, in the Providence Superior Court.[3]

In the city's complaint, the retirement board's December 6, 1989, COLA and pension award action was put in issue, and its legality was challenged. Following routine discovery procedures, the case was ultimately reached for trial before a Superior Court justice (Gibney, J.), sitting without a jury. Upon completion of that trial, the trial justice prepared and entered a written decision in which she denied the city's claims. In that decision, she found that the retirement board's December 6, 1989, vote was valid, and upheld the retirement board's pension and COLA grants. Counsel were ordered to prepare and submit an appropriate judgment for entry by the trial justice.

Instead of preparing that judgment, counsel informed the trial justice that they were attempting to negotiate a final settlement of the case to avoid any appellate

---

**2.** The retirement board's action and vote had been undertaken in apparent reliance upon our opinion in *Bruckshaw v. Paolino*, 557 A.2d 1221, 1222–23, 1224 (R.I.1989), wherein this Court stated that the 1980 Providence Home Rule Charter had vested authority to regulate city employee pensions "in the Employee Retirement Board of Providence," whose duties are to "establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction."

**3.** The resolution provided:

"NOW, THEREFORE, BE IT RESOLVED, That the City Council, under the authority granted under Section 401(d) of the Home Rule Charter of the City of Providence does, by at least a 2/3rd vote of all the Members of said City Council, authorize that

"1. the legal action entitled 'JEROME I. BARON, et al. vs. STEPHEN T. DAY, et al.' may be dismissed.

"2. that the legal action entitled 'CITY OF PROVIDENCE, et al. vs. MAURICE A. BISSONNETTE,et als.' may be substituted in place of 'BARON et al. vs. DAY, et al.'

"3. that legal counsel may submit his bills for payment to the Chairman of the Finance Committee or his designee.

"4. and indemnify and hold harmless said Plaintiffs, from any legal or equitable actions arising from, or in relation to, said *transactions or related events.*" (Emphasis added.)

We point out that the legal action noted in the resolution, *Baron et al. v. Day et al.,* refers to an earlier action that also had been financed by the city council and for which attorney Cavanagh had been retained to represent four individual city employee plaintiffs along with the plaintiff City of Providence. What remains unanswered is, by what authority did the city council gain standing to dismiss that case at the Superior Court level, if, as the city council now claims in this appeal, it was never a party to, or in privity with, the *plaintiff City of Providence* in that case?

proceedings and to finally terminate the city pension controversy and litigation. They requested and were granted time within which to negotiate. Negotiations then ensued between the city solicitor (representing the city treasurer), Cavanagh (representing the City of Providence), the city's director of administration, and counsel for the retirement board. By December 17, 1991, an agreed case settlement had been negotiated. Its terms and provisions pertaining to the city employee pension grants were adopted formally by vote of the retirement board at a December 18, 1991, meeting, and the negotiated consent judgment was thereafter presented to the trial justice for entry. On that same day, the city's ebullient mayor proceeded to author a press release, and scheduled a press conference at which he announced that a case settlement, most beneficial to the city, had been negotiated. He explained at the press conference that the negotiated settlement would reduce the city's retiree pension obligations, that otherwise would have been mandated by · the trial justice's decision, by some fifteen million dollars "over the next three years."

The following day, at a city council meeting, the consent judgment, as well as the mayor's press release concerning the benefits and provisions of the consent judgment, was the subject of discussion by the council's finance committee chairman, Councilman David Dillon. At that council meeting, no question was raised concerning attorney Cavanagh's authority either to agree to, or to enter into, the consent judgment on behalf of the City of Providence. In fact, as later conceded by the city solicitor, the city council and the city of Providence all acted in apparent reliance upon what this Court previously had

said in *Bruckshaw v. Paolino,* 557 A.2d 1221 (R.I.1989), concerning the retirement board's authority pursuant to the city's 1980 Home Rule Charter and, therefore, they proceeded to comply fully with the terms of the consent judgment, and its concomitant financial obligations, during 1992 and 1993.[4] That compliance continued even after this Court's opinion in *Betz v. Paolino,* 605 A.2d 837 (R.I.1992), filed on April 8, 1992.

In *Betz,* this Court held that the city's 1980 Home Rule Charter had served to vest in the city council the exclusive authority to legislate city employee benefits, and had delegated to the retirement board the authority only to administer those council-legislated benefits. *See Betz,* 605 A.2d at 839–40. Notwithstanding that clear holding in *Betz,* the city solicitor, Charles Mansolillo (Mansolillo), nonetheless, in a May 12, 1992, letter to various city officials, including the city treasurer, city controller, pension administrator and city council finance chairman David Dillon, advised all that the consent judgment "remains a valid order of the Superior Court; consequently, currently its terms remain in effect." Thereafter, all remained quiet on the City Hall front for some fourteen months. However, on July 29, 1993, the truce ended and the white flag at City Hall came down.

On July 29, 1993, the city council enacted a council resolution pertaining to the COLA vote.[5] This time, finally acknowledging our *Betz* holding, it ordered its city solicitor to seek judicial aid to relieve the city from its obligation to continue to fund, and to make payment of the COLA and other pension grants mandated by the pension board's COLA vote and the consent judgment.[6] Mansolillo, as city solicitor,

---

4. In *Bruckshaw,* 557 A.2d at 1224, this Court said that "the Providence Home Rule charter vests authority in the Employee Retirement Board of Providence to regulate city employee pensions."

5. City Council Resolution No. 93–493.

6. The resolution stated:

"NOW THEREFORE BE IT RESOLVED:
That this City Council does hereby request the City Solicitor to apply for injunctive and any other appropriate relief to prevent any *further* enforcement of the COLA and other benefit provisions of said consent decree." City Council Resolution No. 93–493. (Emphasis added.)

acting pursuant to that council resolution directive, filed civil action, PC 93–5277 in the Superior Court. In his supporting memorandum Mansolillo specifically noted that "[t]he City solicitor brings this action on behalf of the *City Council* and the *City of Providence* at the request of the *City Council* and pursuant to Sec. 603 of the Home Rule Charter and the City Council resolution approved July 29, 1993," and seeks "relief from payment of *future* COLA's *commencing with the year 1994*." (Emphases added.)[7]

At no time, in any pleading thereafter filed in Superior Court action PC 93–5277, did the city council ever suggest, contend, or assert, that attorney Cavanagh had lacked city council consent to enter the consent judgment in PC 90–2119. In fact, the record in PC 93–5277 reveals that the city and its city solicitor actually entered into an agreed-upon stipulation of facts relating to the validity of the consent judgment, in order to expedite certification by the Superior Court to this Court of certain questions posed in that case. In that stipulation of facts, the city solicitor personally as a party plaintiff, as well as in his capacity as counsel for the city council and the City of Providence, agreed that in PC 90–2119, attorney Cavanagh had been retained by the city council to represent the City of Providence and that he had been authorized to enter the consent judgment in that case for and on behalf of the City of Providence.

On December 12, 1995, this Court chose to respond only to one of the seven questions certified to us in PC 93–5277. In *Mansolillo v. The Employee Retirement Board of the City of Providence*, 668 A.2d 313, 316–17 (R.I.1995) (*Mansolillo I*), we concluded that on the basis of the record before us, and because of the uncontroverted judicial admissions contained in the stipulated facts submitted to the Superior Court, that the consent judgment was valid, final, and binding upon the City of Providence. We declined to respond to

the remaining six questions that had been posed to us in the certification, believing that those questions were such that they should be resolved in the first instance at the Superior Court level. *Id.* at 315.

On December 18, 1995, the city solicitor, city council, and City of Providence moved to reargue the holding made in *Mansolillo I*. In support of their motions they advanced the somewhat oblique contention that the stipulated facts in that case had failed "to clearly differentiate the various parts of the City of Providence" that had made and agreed to the stipulation. In short, they contended that the record did not disclose which, if any, of the two plaintiffs, the city solicitor—or the City of Providence—had actually agreed to the stipulated facts. Overlooked obviously in that murky "find the hidden pill" maneuver lay the undeniable fact that both had been privy and party to the judicial admissions, and both never denied their complicity in making or agreeing to the stipulation. We were unmoved by the attempted bait and switch play contention advanced in the motion to reargue, and after due consideration, the motion was denied by order of this Court entered on February 10, 1996.

Undaunted by our February 10, 1996 order in PC 93–5277, the city council, on July 12, 1996, somehow believing that it still might succeed in divorcing itself from the marriage it had entered into with its co-plaintiff, the city solicitor, and believing that it could disgorge itself from the body politic of the City of Providence, next proceeded to change the field of battle by moving to intervene in a then ongoing Superior Court contempt proceeding against the City of Providence in PC 90–2119.

Upon being permitted to intervene, the city council once again attempted to resuscitate and relitigate its lack of consent contention that had been rejected earlier by this Court in *Mansolillo I,* and, pursuant to Rule 60(b)(4), moved to have the

**7.** City Solicitor's memorandum in support of  verified complaint, p. 13.

consent judgment vacated. In support of its motion to vacate, the city council, by claiming that it was never a party in PC 93–5277, assumed the position that it was not estopped from initiating a new challenge to the consent judgment, and reasoned that because it had never consented to the entry of the judgment in PC 90–2119, the consent judgment was null and void as it pertained to the city council.

That contention, we note, flies squarely in the face of the stipulated facts in PC 93–5277, and contradicts not only the city council's July 29, 1993, resolution that directed its city solicitor to commence PC 93–5277, but also, the city solicitor's subsequent admission submitted in his memorandum to the Superior Court in support of the verified complaint in that case. In that memorandum, the solicitor had written that PC 93–5277 had been commenced "on behalf of the *city council* and the City of Providence at the request of the *City Council* * * *." (Emphasis added.) The city solicitor's later sworn affidavit, made in support of the city council's motion for summary judgment, actually repeats that same assertion.

The trial justice (Israel, J.), in the proceedings below, was unmoved by the city council's contention and found that it had in fact been party to, or in privity with, the named party, "City of Providence," in both PC 90–2119 and PC 93–5277. Accordingly, he concluded that the city council was collaterally bound by the final judgments entered in those cases. The trial justice aptly observed:

"The Court has carefully considered the argument of the City that its Council is a separate judicial person from the City itself. The argument further runs that, since the Council did not consent to the 1991 consent decree and since it was not a named party in the *Mansolillo* case, it is bound neither by the consent decree nor the answer to the certified question in the *Mansolillo* case. Boiled down to its most abstract essence the

part is arguing that it is greater that the whole.

\* \* \*

With the commencement of the *Mansolillo* case [C.A. 93–5277] the City Council, as an agency of the City, had no interest in the pension power question different from that of the City, or the rest of the City government, as a whole. Its interest will be fully subsumed by those of the City and were fully represented by the City's representatives in that litigation. The Council's argument that it was not a party before this Court and the Supreme Court in the *Mansolillo* case fails. All of the City government was before the Courts. All of them are bound by the Supreme Court's answer to the certified question and this Court's declaratory judgment. The consent decree is final and binding on the City, and all its agencies, departments and branches. The *Mansolillo* case is, in effect, a collateral attack on that decree. It has failed. The consent decree has survived a full collateral attack."

In this appeal we accord deferential consideration to the findings made by the hearing justice, and in the absence of our being able to determine that he was clearly wrong, or had misconceived or overlooked material evidence, we will not disturb his findings. *See Foley v. Osborne Court Condominium,* 724 A.2d 436, 439 (R.I.1999). "The doctrine of collateral estoppel directs that an issue of ultimate fact that has been actually litigated and determined cannot be relitigated between the same parties or their privies in future proceedings." *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 680 (R.I. 1999). *See also Garganta v. Mobile Village, Inc.,* 730 A.2d 1, 4 (R.I.1999) (per curiam). While we recognize that the determination of issue preclusion by virtue of collateral estoppel is generally a question of law, we also recognize that in making that determination a motion hearing justice is permitted to make findings of fact to support his or her determination. *See*

*Mulholland Construction Co. v. Lee Pare & Associates, Inc.,* 576 A.2d 1236, 1237 (R.I.1990).

■ In this instance, the city council's regurgitant contention that the consent judgment was "null and void," is premised entirely upon its unfactual assumption that at no time had it been party to, or in privity with, the party that had been designated as the City of Providence in Superior Court cases PC 90–2119 and PC 93–5277. That contention was rejected by the hearing justice.

We have meticulously scoured the case records before us, and we discern therefrom more than ample evidence upon which the hearing justice rightfully could conclude that the city council indeed had been party to, or in privity with, the named party, "City of Providence," in both PC 90–2119 and PC 93–5277. We believe it inconceivable for the city council not to have recognized that at a minimum, it was in privity with the City of Providence in both those cases. In each case, the City of Providence had become a party plaintiff in response to specific direction of city council resolutions. In addition, the city council not only had orchestrated and financed both cases pursuant to city council resolutions, but thereafter had fully complied with, and abided by, the terms of the judgments entered in each case until January 3, 1994. *See* Restatement (Second) *Judgments* §§ 39, 41 (1982).

The hearing justice's findings concerning the identity of parties and common issue, coupled with this Court's opinion in *Mansolillo I,* serves to persuade us that the required elements necessary for him to call into play the issue preclusion doctrine of collateral estoppel were present in the record before him. *See Commercial Union Insurance Co.,* 727 A.2d at 680.[8] Ac-

---

8. The trial justice, we observe, also suggested that the city council's and treasurer's Super.R.Civ.P. 60(b)(4) motion to vacate might also have been subject to dismissal because of its untimely filing. That suggestion merits this Court's noting that:

> At the time when the consent judgment was entered, any Rule 60(b) motion was required to be filed "within a reasonable time, and not more than one year after the judgment, order, or proceeding was entered or taken." That one-year period could not be extended and G.L.1956 § 9–21–2, expressly limited the Superior Court's control over its judgments to that one year period.

> We held in *Colavecchio v. Houle,* 106 R.I. 529, 532–33, 261 A.2d 649, 652 (1970), that the law in effect at the time a judgment is entered thereafter governs review of proceedings in that case. We also held that the one-year period of time within which *any* motion (excepting for an independent equitable action) under Rule 60(b)(4) could be filed was one year, and we said in *Waldeck v. Domenic Lombardi Realty, Inc.,* 425 A.2d 81, 83 (R.I. 1981) (citing *Murphy v. Bocchio,* 114 R.I. 679, 338 A.2d 519 (1975)), "that [the] one year period represents the extreme limit of reasonableness" for filing, and was "absolute and cannot be extended." *Id.* at 83.

> On September 5, 1995, when our present and revised Superior Court Rules of Civil Procedure took effect, Rule 60(b) was amended to substitute a "within a reasonable time" limit in place of the one-year time limit for motions alleging a void judgment. The 1991 judgment in this case had been dead for so long, however, that it was beyond legal resurrection. The city council's mistaken reliance upon the myriad of cases cited to us, such as *Lamarche v. Lamarche,* 115 R.I. 472, 348 A.2d 22 (1975), in support of its contention that judgments alleged to be void can be challenged at any time, simply overlooks not only the real holding in those cases, but also the "within a reasonable time" condition required by Rule 60(b). For example, in *Lamarche,* the Family Court had lacked both subject matter jurisdiction as well as personal jurisdiction over the parties whose rights it attempted to adjudicate. That is not the case here. In this case, the Superior Court had clear subject matter jurisdiction to entertain and adjudicate the City of Providence's complaint against the retirement board as well as personal jurisdiction over the party defendants, all of whom had been duly served.

> The real question posed to the motion justice in this case did not concern any challenge to the court's subject matter jurisdiction, but instead, was simply who and what constituted the party plaintiff "City of Providence." The motion justice, after full hearing, and after reviewing all the evidence submitted to him, found and concluded that notwithstanding the city council's smoked mirror contentions, he could nonetheless still clearly recognize that the city council had been a viable component

cordingly, the hearing justice did not err in denying the intervenor city council, and city treasurer's motions to vacate the consent judgment, and their attempts to relitigate the validity and finality of the December 18, 1991, consent judgment in PC 90–2119 under the guise of their Rule 60(b)(4) motion. By entering into the consent judgment, the City of Providence, including its city council, waived all defenses it may have had relating to the subject matter underlying the consent judgment. *See DeFusco v. Giorgio*, 440 A.2d 727, 729 (R.I.1982).

The city council and city treasurer, in what appears to represent their final and expedient hope to find a willing ear to their futile call for help, assert that because the city treasurer had not signed the consent judgment, it was not entered in accordance with Rule 54(b). This contention is devoid of merit and requires but scant consideration. The three party plaintiffs in PC 90–2119 had all asserted but *one claim for relief*, and that single claim was finally resolved by entry of the consent judgment; consequently, Rule 54(b) that concerns only multiple claim litigation was not applicable. *See* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, §§ 2651–2680 (1998).

In any event, since December 18, 1991, neither individual private party has ever raised objection to the entry of the consent judgment. They are not represented by either attorney now representing the city's interest in this case, and have never been recognized as being viable parties by either the assistant city solicitor, city solicitor or by present private counsel retained by the city council. This lack of recogni-

tion is clearly evidenced by the total failure by all of those attorneys to have served either of these non-consenting private parties with copies of the pleadings, motions and other filings in this protracted litigation, as required by Rule 5 of the Superior Court Rules of Civil Procedure. To the extent that either of the non-consenting private parties might believe that they may yet be entitled to some relief different from that adjudicated in the consent decree, then Rule 54(b), if somehow found applicable, preserves to them whatever separate claim they may believe they might retain. The record discloses that no different claim has ever been asserted by either, and, if made now, some eight years later, any such claim might very well be subject to summary dismissal on ground of estoppel.

For the reasons herein above set out, the city council's and city treasurer's appeals are denied and dismissed. As regards the myriad of contentions that had been raised by them in their respective briefs, and which we have not specifically addressed, our failing to do so is not because of oversight, but instead, because we have determined them to be without merit.

The judgment entered by the Superior Court in PC 90–2119 is affirmed, and the case papers and record are remanded to that court.

## II

*Appeal No. 96–424–Appeal (PC 93–5277)*

In the second of these consolidated appeals, we review the Superior Court's January 4, 1999, order entered by Silverstein, J., in PC 93–5277.[9]

---

part of the plaintiff party designating itself as the "City of Providence." The rose was still a rose, no matter how wilted it pretended to be, and the motion justice found it to be so. Accordingly, had he denied the city council's and city treasurer's motions to vacate for lack of a timely filing, we would be hard pressed to conclude error in light of Rule 60(b) as it existed at the time of the entry of the consent judgment in 1991.

9. The trial justice's order provided in pertinent part:

"1. That the issues remaining from the six certified questions left unanswered in *Mansolillo v. Retirement Board* are moot;

"2. That the Consent Decree entered in *City of Providence v. Retirement Board*, C.A. No. 90–2119, applies to all retired city employees who were retired on or before the date of entry of the Consent Decree on

In that case, seven questions of alleged doubt and importance had been earlier certified to this Court for our consideration and response. We elected to respond only to question No. 3 and remanded the remaining six questions to the Superior Court for that court to hear and rule upon in the first instance. *Mansolillo v. The Employee Retirement Board of Providence*, 668 A.2d 313 (R.I. 1995) (*Mansolillo I*). Upon that remand, and after hearing, the trial justice found and concluded that in light of our opinion in *Mansolillo I*, those remaining questions, with the exception of question No. 7, had become moot.

He also found and concluded that the parties to the consent judgment entered in PC 90–2119 on December 18, 1991, had intended that it would apply only to those already retired city employees who were actual parties in the litigation, and to their beneficiaries, and "to those nineteen individuals [whose] retirement was approved at the meeting of the Employee Retirement Board on December 18, 1991."

The city solicitor, the city treasurer, the city council, the Employee Retirement Board and the intervenor labor organizations, Public Service Employees' Local Union 1033, LIUNA, AFL–CIO, Providence Retired Police and Firefighters, Local 799, all have appealed.

We begin our review of the respective appeals in the second of these consolidated appeals by noting that the trial justice, after reviewing essentially the same contentions as now being urged upon us by the parties, and after reviewing the trial exhibits proffered by them, concluded that there existed but two dispositive issues for him to address and resolve. Those were:

"(1) In view of the Supreme Court opinion of December 12, 1995 in *Mansolillo,*

December 18, 1991 and to those nineteen individuals who's [*sic*] retirement was approved at the meeting of the Employee Retirement Board on December 18, 1991 but who's [*sic*] formal retirement date was designated as December 19, 1991;

*et al. vs. The Employee Retirement Board of the City of Providence,* 668 A.2d 313 and the further proceedings in this case, including without limiting the generality of the foregoing, the remand order, are the answers to the six unanswered certified questions moot?

and,

"(2) Should the Consent Decree be read with respect to the COLA provisions to apply only to retirees (and beneficiaries of retirees) who upon the effective date of the *Consent Decree, December 18, 1991, were retired Class A employees or retired Class B employees?*" (Emphasis added.)

■ The trial justice next proceeded to conclude that his "quick answers" to those two issues were "yes and yes." He then determined that because of his quick "yes" response to what had been certified question No. 2, it was unnecessary for him to undertake any consideration of the constitutional issues raised by the defendants concerning any alleged violation of contractual obligations arising out of the consent judgment and protected by Article I, section 10 of the United States Constitution and article 1, section 12, of the Rhode Island Constitution. We address now the reasons he relied upon for that conclusion. In doing so, we employ a de novo standard of review in our consideration of the defendants' federal and state constitution-based claim of impaired contractual obligations, giving great weight and deference, however, to the findings of historical fact made by the trial justice. *See Ornelas v. United States,* 517 U.S. 690, 696–97, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911, 919 (1996); *Powers v. State,* 734 A.2d 508, 514 (R.I. 1999).

The trial justice, following his acknowledgment of the continued validity of the

"3. That the Consent Decree entered in *City of Providence v. Retirement Board,* C.A. No. 90–2119 applies to all beneficiaries of retirees who retired on or before the dates set forth in Paragraph 2 of this Order, * * *."

December 18, 1991, consent judgment in PC 90–2119, next undertook to examine the wording employed by the parties in drafting the consent judgment for entry by Justice Gibney. In doing so, he correctly noted that the consent judgment was, in essence, a contract between the parties to that litigation. *See Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 703 (R.I.1994). He then determined that the plain "meaning of the terms 'retired Class A Employee' and/or 'retired Class B employee'" employed by the parties in the consent judgment required him to interpret those terms as referring only and specifically to those city employees who had retired before December 18, 1991, and the actual parties to the litigation, and to the nineteen additional persons who had retired on December 18, 1991. Referring to those specific persons and their beneficiaries, he concluded that the consent judgment remained in effect, thus preserving to that limited group the consent judgment retirement benefits.

■ The defendants here on appeal claim that the trial justice erred in construing the language employed in the consent judgment and contend that its wording was intended to apply to all Class A and Class B city employees who already had retired, as well as those who would retire in the unlimited future. Thus, they assert that city council ordinances No. 94–1 and No. 94–2 enacted on January 3, 1994, and which were approved on January 10, 1994, impaired the city's contractual obligations that arose out of the consent judgment, and they contend that the trial justice erred in declining to consider their constitutional challenge. As a result of his interpretation of the wording employed by the parties in the consent judgment, the trial justice entered the order being challenged here by the defendants, and which in pertinent part provides:

"2. That the Consent Decree entered in *City of Providence v. Retirement Board*, C.A. No. 90–2119, applies to all retired city employees who were retired on or before the date of entry of the Consent Decree on December 18, 1991 and to those nineteen individuals who's [*sic*] retirement was approved at the meeting of the Employee Retirement Board on December 18, 1991 but who's [*sic*] formal retirement date was designated as December 19, 1991;

"3. That the Consent Decree entered in *City of Providence v. Retirement Board*, C.A. No. 90–2119 applies to all beneficiaries of retirees who retired on or before the dates set forth in Paragraph 2 of this Order, and * * *."

■ The defendants here on appeal question and challenge the validity of the trial justice's interpretation of the wording employed in the consent judgment. They contend that the retirement pension benefits prescribed in the judgment were intended to benefit all and any city employee who had retired, or would retire in the future, and that it was without time limitation and immutable to city council amendment or change. We are unable to glean from the wording of the consent judgment the interpretation that is advocated by the defendants. We believe, as did the trial justice, that where, as here, the consent judgment contract is reasonably susceptible to different constructions, it is consequently considered to be ambiguous. *See Flynn v. Flynn*, 615 A.2d 119, 121 (R.I. 1992). In such event, the practice of this Court has been to " 'adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other.' " *Donelan v. Donelan*, 741 A.2d 268, 270 (R.I.1999) (per curiam) (quoting *Flynn*, 615 A.2d at 122).

The trial justice in this case closely examined the language employed by the parties in the consent judgment. He concluded from that examination that it was intended to apply and provide retirement benefits only for those certain Class A or Class B city employees who had retired on or before December 18, 1991, and "that nothing in the Consent Decree precluded the City Council from enacting the various

ordinances referred to specifically and by implication in the aforequoted certified question # 7." [10] Guided by what we said in *Retired Adjunct Professors of Rhode Island v. Almond,* 690 A.2d 1342, 1346 (R.I.1997), wherein we declined to apply a private contract analysis to a statutory public pension benefit scheme, as well by our case precedents dictating that findings made by a trial justice are to be accorded great weight and deference, we are unable on the record in this case to conclude that the trial justice's interpretation of the consent judgment was erroneous. Consequently, we must, and do, affirm his finding regarding the wording and effect of the consent judgment.

In light of our concluding that the trial justice did not err in interpreting the intent of the consent judgment, we now take up the defendants' challenge to the validity of city council ordinances No. 94–1 and No. 94–2, both enacted on January 3, 1994, and effective on January 10, 1994. The defendants assert that those ordinances served to impair the city's contractual obligations arising out of the consent judgment, in violation of Article I, section 10, of the United States Constitution and article 1, section 12, of the Rhode Island Constitution.

We begin our analysis of that contention, as noted earlier, on a de novo basis, but yet accord both great weight and deference to the trial justice's findings of fact. Clearly, the Providence Home Rule Charter adopted by its city voters and ratified, confirmed and validated by the General Assembly (P.L.1981, ch. 37), and which became effective on the first Monday in January, 1983, vested in the Providence City Council exclusive authority to legislate city employee pension benefits and to maintain, amend and make changes in the city's employee pension system. *See Betz,* 605 A.2d at 839. That being so, the city council was, in the first instance, authorized to enact the two ordinances in question. However, it is the validity of what the city council purported to accomplish in each of those ordinances that is the thrust of the defendants' challenge.

■ First, we review the contents of city ordinances No. 94–1 and No. 94–2. It appears abundantly clear that the legislative purpose underlying the two ordinances was dual in nature: first, to make changes in the city's employee retirement program to avoid an escalation of the city's retirement benefit financial obligations and, second, to attempt a retroactive reduction of those obligations by providing to nullify and vacate the consent judgment, and to remove the de jure effect of the retirement benefits provided by that consent judgment as a result of the city council's and city administration's continued acquiescence to its pension benefits grants. The consent judgment, however, is clearly protected by the impenetrable posted authority that we know as separation of powers, based upon articles 5 and 10 of the Rhode Island Constitution. Not even the General Assembly is permitted to accomplish what the city council attempted to do when it enacted city council ordinances No. 94–1 and No. 94–2. In *Taylor & Co. v. Place,* 4 R.I. 324 (1856), then Chief Justice Ames, writing in that landmark opinion, clearly proclaimed that the General Assembly was, by virtue of our state constitution's separation of powers provision, utterly powerless to enact legislation that would serve to interfere with, set aside, or reopen a judgment that had been entered by the "court of common pleas" in the City of Providence. The principles enunciated in *Taylor,* for the past 140 years, have been bedrock judicial doctrine in this state. *See, e.g., State v. Almonte,* 644 A.2d 295, 298 (R.I.1994); *Lemoine v. Martineau,* 115 R.I. 233, 237–38, 342 A.2d 616, 620 (1975).

Accordingly, that portion of city council ordinance No. 94–1, purporting to vacate and nullify the consent judgment in PC 90–2119, fails constitutional muster and is invalid and without force or effect, and

**10.** City Council Ordinances No. 94–1 and No. 94–2.

that portion of city council ordinance No. 94–2 intending to accomplish *indirectly*, by retroactive application, what ordinance No. 94–1 was unable directly to accomplish, likewise is invalid and without force or effect with regard to those city employees who effectively had retired on or before December 18, 1991.

Recognizing our clear authority to declare and hold a portion of an ordinance invalid and yet to uphold the remaining sections of the ordinance if the valid portion is not indispensable and can be severed without destroying the real purpose for enactment (*see Greenwich Bay Yacht Basin Associates v. Washburn*, 560 A.2d 945, 948 (R.I.1989)), we are satisfied that the overriding intention and real purpose for the enactment of the two ordinances was to amend and make changes in the city's retirement pension program, and that those changes were not inextricably dependent upon the time when the changes would actually become effective. Thus, we are able, like the trial justice, to conclude that the two ordinances in primary part did constitute a valid exercise by the city council of its exclusive authority to legislate retirement pension benefits for its city employees, and to enact changes in its employee retirement program.

We take up next the defendants' and intervenors' contention that the two ordinances, No. 94–1 and No. 94–2, constituted an invalid attempt by the city council not only to set aside a valid Superior Court judgment and to wipe away the retired city employee benefits provided therein, but that they served also to impair the vested contractual retirement obligations provided in the consent judgment that the defendants and intervenors contend are without time limitation and are immutable. They rely upon our holding in *Mansolillo I* filed on December 12, 1995, to support this contention.

The lynchpin for our ultimate conclusion about defendants' and intervenors' contention concerning the invalidity of the above-ordinances rests quite understandably in great part on what we said and held, and on what we did not say and hold in *Mansolillo I*. Unfortunately, the parties in great part simply have confused that case.

In that case, this Court elected to respond to only one of the seven questions that had been certified to us by the Superior Court. That question concerned only whether the consent judgment in PC 90–2119 was a final and binding judgment between the consenting parties to that case. Based upon the stipulation of facts that had been entered into by the parties in that case, this Court concluded that the "City of Providence" had knowingly entered into the consent judgment and had knowingly given up and waived its right to appeal Justice Gibney's written decision and the resulting consent judgment. We then said that absent any fraud or mutual mistake, the consent judgment was valid and binding and could not be opened, changed or set aside without the assent of the parties to that consent judgment. That was this Court's response to the specific question posed to us by question No. 3 in the certification.

At no point in the course of our response to question No. 3 did this Court ever state that as a consequence of the consent decree, the Providence City Council was thereafter to be forever precluded from enacting legislative changes to the city's pension system. In view of our earlier holding in *Betz, supra*, decided on April 8, 1992, any such city council legislative preclusion imposed by this Court in *Mansolillo I*, decided some three years later on December 12, 1995, would have created virtual chaos and placed the city's pension system in a state of limbo for decades to come. Unfortunately, some of the party defendants and intervenors have assumed for themselves that very position.

In those portions of city council ordinances No. 94–1 and No. 94–2 that we have determined to be valid, we, like the trial justice, perceive nothing that in any

manner serves to invalidate or set aside the Superior Court's consent judgment. That judgment, as interpreted by the trial justice, remains today as valid as when originally entered. Accordingly, as determined by the trial justice, the group of city employees who retired prior to December 18, 1991, and the nineteen city employees who retired effective December 18, 1991, were the only city retirees that could benefit from its pension grant provisions, and all members of that group continue to remain entitled to those benefits.

Thus, according the required great weight and deference to the trial justice's findings, we agree with his finding that the pension benefit changes brought about by city council ordinances No. 94–1 and No. 94–2 are valid city council enactments, and the pension changes made by virtue of those ordinances represent a proper exercise by the city council of its exclusive legislative authority over the city's employee pension system. Because those changes do not, and cannot, impair any of the pension benefit rights previously granted to those retired city employees who effectively had retired on or before December 18, 1991, the consent judgment contract thus remains intact and continues to remain valid, unless and until modified or changed in accordance with the manner prescribed by this Court in *Mansolillo I*. Accordingly, since none of the parties to the consent judgment, as defined by the trial justice, is in any way adversely affected by city council ordinances No. 94–1 and No. 94–2, the defendants' and intervenors' consent judgment contract impairment claims all must fail. As to the defendants' and intervenors' additional appellate contentions, we discern no error on the part of the trial justice in concluding that, in light of *Mansolillo I*, only certified question No. 7 with respect to his interpretation of the consent judgment needed to be addressed by him.

Accordingly, we affirm his findings, conclusions, and final judgment.

*Appeals—Summary*

In Appeal No. 96–265–A., (PC 90–2119), we deny and dismiss the Providence City Council's and the Providence City Treasurer's appeals, and affirm the final judgment entered in Superior Court civil action, PC 90–2119, denying their respective motions to vacate the consent judgment entered in that case. The case papers and record in that proceeding are remanded to the Superior Court.

In Appeal No. 96–424–A., (PC 93–5277), we affirm:

(1) The trial justice's finding that Providence City Council ordinances No. 94–1 and No. 94–2, as later modified in this opinion, and No. 95–17 are properly enacted and valid ordinances of the City of Providence.

(2) The trial justice's interpretation and finding that the consent judgment entered in Superior Court civil action PC 90–2119 remains a valid judgment of that court, but that its retired employee pension provisions are applicable only to all city of Providence employees who retired on or before December 18, 1991, and to those nineteen employees who retired effective that date, and to no others.

(3) The trial justice's finding that in light of his interpretation and determination that the consent judgment was intended only to provide benefits for those city employees who retired before December 18, 1991, and to the nineteen whose retirement became effective on that date, and because it remains unaffected by the city council ordinances in question, all other issues remaining from the six previously certified questions before him had become moot.

Accordingly, we deny and dismiss the defendants' and intervenors' appeals and remand the case papers and records in this case to the Superior Court.

As part of our remand order, pursuant to the authority vested in this Court to fashion remedies to insure equity and jus-

tice to litigants and parties, and in order to bring to an end this decade long litigation (*see Cheetham v. Cheetham,* 121 R.I. 337, 342, 397 A.2d 1331, 1334 (1979)), we add and direct that for reason of the confusion engendered by the shifting positions taken by the City of Providence in this litigation, there will be no right on the part of the city to recoup any retirement pension benefits previously paid to any retired city employee pursuant to any contempt proceeding order, or orders, previously entered by the Superior Court.