DECISION
Before this Court is a consolidated petition for damages, attorney's fees, and pre-judgment interest resulting from the City of Providence's (City or Defendant's) refusal to remit payment to attorney Richard A. Skolnik (Skolnik or Plaintiff) for legal services rendered. Jurisdiction is pursuant to G.L. 1956 § 8-12-13.
 FACTS/TRAVEL
Between January 1990 and June 1993, Skolnik represented the Employees Retirement System of the City of Providence (Retirement Board) in a variety of legal matters, many involving power disputes between the latter and the City. The pertinent background of this representation follows.
In 1981, our state legislature, via the Retirement Act, created the Retirement Board and vested it with the power to hire its own legal counsel (P.L. 1981, ch. 359, § 3(4)), while contemporaneously validating the City's newly enacted Home Rule Charter (Charter), which in § 603, conferred upon the Providence City Solicitor (Solicitor) the sole authority to represent the City and its departments. Questions quickly arose as to whether the Retirement Board was merely a City department subject to § 603, or a corporate entity with the ability to freely appoint its own legal counsel. In 1992, the Providence City Council (Council) amended its retirement ordinance so that the Retirement Board would no longer have the ability to appoint legal counsel. Thus, the Solicitor would act as the sole legal representative for all City departments and would approve and oversee all hiring of outside legal counsel by any of these departments. The debate over the Retirement Board's status relative to the City was finally determined by our state Supreme Court, which held that "the retirement board's status as an independent corporate entity did not survive its incorporation into the [city] charter . . . rather . . . [it became] . . . subject to the legislative power of the city council delineated in charter § 401 because the retirement board's authority is now derived from the Home Rule Charter, not the Retirement Act." Retirement Board v. City Council of the City of Providence, 660 A.2d 721, 728 (R.I. 1995) (Retirement Board I). Additionally, the Court found that if § 908 of the Charter, which describes the Retirement Board, was inconsistent with the legislature's description of the former in the Retirement Act, then the Charter's description would control. Id. at 727.
Prior to these developments, however, the Retirement Board, in 1990, hired Skolnik as its legal counsel, who often represented it in suits against the City. (Contract Period I). This contract was renewed in 1992, at which time the plaintiff agreed to continue to represent the Retirement Board at a certain hourly rate until June 30, 1993 (Contract Period II). Although this contract terminated in 1993, Skolnik continued to represent the Retirement Board on several cases which had originated during the 1990 — 1993 period.[1] In addition to these matters, Skolnik also represented the Retirement Board on several other matters, some of which a) commenced during Contract Period I; b) commenced during Contract Period II; and/or c) commenced after Contract Period I and II but derived their factual underpinnings from either or both of these time periods. Those cases are City of Providence v. Employees Retirement Board, C.A. 90-2119, November 27, 1996, Israel, J. (City of Providence I); Charles Mansolillo v. Employees Retirement Board, C.A. 93-5277, November 12, 1998, Silverstein, J. (Mansolillo I); City of Providence v. Employees Retirement Board, 749 A.2d 1088 (R.I. 2000) (City of Providence II) (the consolidated appeal to the Supreme Court of the former two cases); Retirement Board v. Vincent A. Cianci, Jr., C.A. 96-11179, April 23, 1997, Israel, J. (Retirement Board III); Retirement Board v. Vincent A. Cianci, Jr., 722 A.2d 1196 (R.I. 1999) (Retirement Board IV) (the appealing of the former decision); Retirement Board v. City of Providence, C.A. 96-6227, April 23, 1997, Israel, J. (Retirement Board V); Retirement Board v. City of Providence, C.A. 97-2080 (Retirement Board VI); Theresa Almagno v. Municipal Employees Retirement System, C.A. 90-6851, February 6, 1998, Silverstein, J. (Almagno).
The City, however, disputed the Retirement Board's authority to engage the services of Skolnik in the above matters. Accordingly, after a plethora of litigation surrounding the validity of Skolnik's representation of the Retirement Board, the City, in 1997, ceased paying Skolnik's legal bills for the above matters. Unable to rectify the dispute, Skolnik filed three separate complaints with this Court on January 5, 1998; February 3, 1998; and April 8, 1998. On June 10, 1998, the three cases were consolidated.
 THE DISPUTED CASES
There has been a string of litigation connected to the present matter. In City of Providence v. Employee Retirement Board, 749 A.2d 1088, 1089 (R.I. 2000), State Supreme Court Justice Bourcier, for instance, recently described these matters as a "kaleidoscopic chronology of . . . protracted cases." Earlier, in City of Providence I, Judge Israel frankly remarked on the near impossibility involved in "untangl[ing] the confusing history of the several strands of litigation which form the tapestry of the City's pension system." In the case at bar, the plaintiff argues that the legal services he provided to the Retirement Board on the enumerated matters were either partially paid or, in some cases, completely unpaid by the City. The plaintiff maintains that the disputed matters either began during Contract Periods I and/or II, or had their factual underpinnings during these periods. Alternatively, the defendants argue that Skolnik's representation of the Retirement Board after Contract Periods I and II exceeded the limited grant of authority conferred upon him by the Court in Retirement Board II. Essentially, the Defendants argue that the only way the Plaintiff could validly represent the Retirement Board after Contract Period II is if the Court "overlooks" the Retirement Board's lack of standing to sue the City.[2] After a careful independent review of the entire record, this Court is not persuaded by the City's argument, as it is apparent that our state Supreme Court did not curtail the plaintiff's representation of the Retirement Board as sharply as the defendants argue.
It is undisputed that Skolnik's legal representation of the Retirement Board from 1990 to 1993 constituted two binding contractual relationships. It is also undisputed that the matters that Skolnik represented the Retirement Board on during these periods were valid engagements for which the City fully compensated him.[3] At issue, however, is the validity of the plaintiff's representation of the Retirement Board against the City on the eight specific cases enumerated herein and the types of matters for which the Retirement Board may continue to retain the Plaintiff's legal services.
Amidst the constant flow of litigation, our Supreme Court has provided a good deal of guidance on the ability of the Retirement Board to engage legal counsel independent of the Solicitor's office. The Supreme Court has held that as a general rule, the Retirement Board is precluded from retaining outside legal counsel to represent it without the permission of the Solicitor. However, the Supreme Court held that where the interests of the Retirement Board and the Solicitor conflict and the factual underpinnings of the matters arose during the Plaintiff's contract period, the Retirement Board may properly retain the services of Skolnik, even if those matters continue or begin after the contract period. Retirement Board II at 813. Subsequently, the Supreme Court admonished the Retirement Board that their decision in the latter case was "not [to] be regarded as an open authorization to the board to retain counsel every time it disagrees with the city government in respect to issues relating to the retirement fund." Retirement Board IV. Instead, the Supreme Court's decision in Retirement Board II was specifically tailored to the situation of the plaintiff, reaffirming the validity of the services he had provided to the Retirement Board during Contract Period II.
[1] In Retirement Board v. City of Providence, 666 A.2d 810 (R.I. 1995) (Retirement Board II) the Supreme Court authorized Skolnik to continue to represent the Retirement Board in six specific cases. The trial justice found that in each of these cases, which involved the Retirement Board against the City, the Solicitor had conflicts of interest pursuant to Rules 1.7(a), 1.9, and 1.10 of the Rhode Island Supreme Court Rules of Professional Conduct.
[2] In Retirement Board I, the Court found that since the Retirement Board did not survive incorporation into the Charter, it had no standing to bring suit against the City; however, in this case, the Court overlooked the standing requirement because of the substantial public interest involved in the Retirement Board's ability to invest pension funds and whether the city council could divest the latter of this power without voter approval via a special referendum. See generally, Retirement Board I.
[3] While the Court in Retirement Board II spoke of the "contract period" only in the context of 1992 to 1993, it must be noted that this period, as opposed to the 1990-1992 time frame, was singled out for litigation because it was in 1992 that the City amended its retirement ordinance depriving the Retirement Board of the ability to hire legal counsel. By implication then, Contract Period I was as valid contractually as Contract Period II was later held to be. Thus the same standard the Court used to validate Skolnik's participation in the six cases of Retirement Board II is applicable to the eight cases of the present litigation.
Presently, it is necessary to measure the eight cases, which are the subject of this litigation, to the standard enumerated in Retirement Board II. Each one arose during, or had its factual underpinnings from, Contract Periods I or II. Specifically, each case, with the exception of Almagno, concerned a consent decree that the City and the Retirement Board had negotiated in 1991 and which dealt with the minimum base salaries and cost of living adjustments (COLAs) paid to municipal public safety employees and/or their beneficiaries. Almagno, which commenced in 1990, dealt with contested pension payments made by the City to the widow of a deceased city firefighter. In each of the eight cases, Skolnik represented the Retirement Board against the City because the Solicitor had conflicts of interest identical to the conflicts cited by the Court in Retirement Board II. Consequently, since each case either originated in, or has its factual underpinnings from, the time when Skolnik was validly retained by the Retirement Board, it is apparent that the Court's prospective ruling concerning his continued representation of the Retirement Board in a limited capacity applies to each of them.
 REQUESTED RELIEF
In his complaint, the Plaintiff enumerates four specific theories of relief which he asks this Court to grant. They are Count I, violations of42 U.S.C. § 1983; Count II, tortious interference with the contract; Count III, an award of punitive damages; and Count IV, an award of attorney's fees pursuant to G.L. 1956 § 9-1-45. This Court finds, however, that these equitable remedies are not here warranted.
Specifically, Count I alleges that the Solicitor intentionally and maliciously deprived Skolnik of his constitutionally protected property interest in the attorneys' fees for the eight disputed cases. Section 1983 of 42 U.S.C. provides that aggrieved parties may bring suit for a deprivation of such constitutionally granted rights. In the present matter, however, the Plaintiff has not presented sufficient evidence that the City's termination of payments on the eight cases in 1997 was maliciously motivated. The Court is not satisfied that the Solicitor, maliciously directed the city controller (Controller) to cease any further payments to the plaintiff for legal services.
Count II alleges that the Solicitor intentionally and maliciously interfered with the contract between Skolnik and the Retirement Board. To establish a prima facie case for tortious interference, the moving party must show 1) the existence of a contract; 2) the alleged wrongdoer's knowledge of the contract; 3) his intentional interference; and 4) damages resulting therefrom. Belliveau Bldg. Corp v. O'Coin, 763 A.2d 622, 627 (R.I. 2000). While a showing of malice in the sense of ill-will is not required, the moving party must at least demonstrate that there was legal malice — an intent to do harm without justification. Id. Presently, the plaintiff has sufficiently demonstrated the existence of a valid contract, and it is apparent from the record evidence that the Solicitor was aware, via the Retirement Board II case, that a valid contract existed before he ordered the cessation of payments to Skolnik. Accordingly, the Plaintiff has not shown legal malice on the Solicitor's part. At no point in the evidence before the Court does it appear that the Solicitor intended to cause Skolnik harm without justification. Rather the evidence warrants the conclusion that the Solicitor acted on the good faith belief that the Retirement Board lacked the authority to retain Skolnik's services.
Count III asks the Court to grant an award of punitive damages for the Solicitor's denial of Skolnik's property interest in said legal fees. Such damages, which are granted only in extreme cases which are characterized by "such willfulness, recklessness or wickedness, on the part of the part at fault, as amounts to criminality. . ., " are not recoverable against a municipality. Hagan v. Providence Worcester R.R., 3 R.I. 88, 91 (1854); Graff v. Motta, 695 A.2d 486,489 (R.I. 1997).
Count IV asks this Court to grant the plaintiff an award for attorney's fees. G.L. 1956 § 9-1-45(1), however, requires that such an award follows only if there was a "complete absence of a justiciable issue of either law or fact raised by the losing party . . . . " Accordingly, our state Supreme Court has held that so long as an arguable point of either law or fact supports the non-movant's position, a trial court may properly reject the movant's request for reasonable attorney's fees. Bucci v. Anthony, 667 A.2d 1254, 1256 (R.I. 1995). In the case at bar, the plaintiff has not demonstrated that the City's position did not rest on an arguable factual or legal position. While the City incorrectly viewed the eight cases as falling outside Contract Period I and II, its position in this often nebulous relationship cannot be considered baseless in either law or fact.
While none of the above equitable remedies are warranted, G.L. 1956 § 9-21-10 provides that an award of pre-judgment interest at twelve-percent (12%) per annum thereon from the date the cause of action accrued . . . . " is appropriate for "any civil action in which a verdict is rendered or a decision is made for pecuniary damages." In the present case, the plaintiff has successfully demonstrated that he should be compensated for the time billed on the eight cases herein mentioned. Accordingly, this Court finds Plaintiff is entitled to pre-judgment interest at 12%.
 CONCLUSION
After a careful, independent review of the entire record, including obtaining and reviewing each of the subject cases, this Court finds that the plaintiff's representation of the Retirement Board on the eight subject cases was permissible within the narrow boundaries established by the Court in Retirement Board II. Since these cases either commenced or had their roots during Contract Periods I and II, Skolnik's services constituted a limited extension of the work he performed for the Retirement Board during this time.
Plantiff is awarded counsel fee's plus 12% interest. Counsel shall submit the appropriate judgment for entry.