**Mary C. LAVERTY**

v.

**Thomas PEARLMAN.**

No. 93–443–Appeal.

Supreme Court of Rhode Island.

Feb. 16, 1995.

**698**

G. Quentin Anthony, Newport, for plaintiff.

Shayle Robinson, Cranston, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on appeal by the plaintiff, Mary C. Laverty (plaintiff), from a judgment entered in the Superior Court finding that $16,667 was a fair and reasonable attorneys' fee for legal services provided by the law firm of Pearlman, Vogel & Violet. We affirm the judgment of the Superior Court. The facts insofar as pertinent to this appeal are as follows.

On June 20, 1989, the town of Middletown (the town) held a special election (the bond-referendum election or the election) asking voters if an act passed at the 1989 session of the General Assembly authorizing the town to issue bonds in an amount of up to $17,140,-

000 should be approved. If the referendum was approved, bonds would be issued to finance the acquisition of land for school buildings and for capital improvements to existing school buildings and athletic facilities. Voter turnout was very low, and the referendum was approved by a margin of forty-one votes.

On July 29, 1989, plaintiff engaged the services of Arlene Violet (Violet), an attorney associated with defendant's law firm, Pearlman, Vogel & Violet (it is disputed concerning whether Violet was a partner in the firm) in connection with an attempt to invalidate the bond-referendum election. The plaintiff paid Violet a $1,500 retainer with respect to this engagement.

Violet informed defendant, Thomas Pearlman, a principal partner in Pearlman, Vogel & Violet, of the nature of the work that she had agreed to undertake on behalf of plaintiff. After discussing the matter with Violet, defendant concluded that Pearlman, Vogel & Violet would require a fee of $25,000 in order to represent plaintiff in the matter. The defendant then met with plaintiff and informed her that due to the nature of the work involved, the firm would require a fee of $25,000 in order to represent her. Shortly thereafter plaintiff remitted to Pearlman, Vogel & Violet an additional $23,500, which together with the $1,500 she had previously given to Violet totaled the $25,000. A "client fee agreement" was also executed by both plaintiff and defendant. Whether the $25,-000 was a flat fee or a retainer is disputed by the parties. The defendant claims the $25,-000 was a flat fee whereas plaintiff maintains that it was a retainer.

On July 31, 1989, Pearlman, Vogel & Violet commenced an action (C.A. No. 89–0376) on behalf of plaintiff, seeking to invalidate the bond-referendum election.[1] The action was brought in plaintiff's individual capacity and also as a class action, on behalf of voters who allegedly were denied proper notice of the election. The amended complaint alleged several procedural violations regarding the manner in which Middletown voters were notified of the election. The plaintiff requested the court (1) to issue a temporary

---

1. An amended complaint was filed on August 1, 1989.

restraining order and a preliminary and permanent injunction preventing the Middletown Town Council from awarding contracts based on the approval of the bond issue, (2) to declare the election illegal, and (3) to nullify the election and/or issue a mandatory order to members of the Board of Canvassers to vacate the election or its certification.

On August 7, 1989, however, the Middletown Town Council (town council) voted not to issue any bonds pursuant to the approval of the bond referendum. Apparently this decision was made because of the town's lack of compliance with a statutory requirement concerning advertising of special elections when voting districts are combined. Voting districts had been combined for this special election, and the town council believed that the failure to comply with the statutory requirement rendered the election invalid. The town council voted instead to reschedule the bond-referendum election as part of the general election that was to be held on November 7, 1989. As a result of the town council's decision not to issue any bonds pursuant to the approval of the bond referendum, the action commenced by plaintiff to invalidate the election was rendered moot. The action was therefore dismissed with prejudice.

On October 18, 1989, Pearlman, Vogel & Violet filed a second action (C.A. No. 89–0497) on plaintiff's behalf. This action, like the first one, was brought in plaintiff's individual capacity and also in her capacity as a member of a class of voters allegedly injured by the conduct of specified officials of the town of Middletown. This second action sought to enjoin the town council from holding the rescheduled bond-referendum election as part of the general election on November 7, 1989, until a hearing on the merits or a hearing on a preliminary injunction could be held. The plaintiff alleged inter alia that the bond authorization enacted by the General Assembly did not comply with state law and that it exceeded the bond authority under the Middletown Charter and Town Code. The plaintiff's motion for a temporary restraining order preventing the town from proceeding with the election and/or issuing the bonds was denied. The election proceed-

ed as scheduled on November 7, 1989, and this time the bond referendum was defeated. Because the referendum was defeated, plaintiff's second action was also rendered moot and was therefore dismissed with prejudice.

On May 18, 1990, plaintiff filed a motion for payment of attorneys' fees incurred in her efforts to have the first bond-referendum election invalidated. By this motion plaintiff sought to be reimbursed by the town of Middletown for her attorneys' fees incurred in C.A. No. 89–0376. Attorney Violet, who prepared the motion, submitted an affidavit in support thereof accompanied by time sheets listing her work performed, the times allocated to each task, and the amounts charged for each task. At the time the motion was filed, Violet was no longer associated with defendant's law firm, having left Pearlman, Vogel & Violet approximately four and one half months earlier to start her own law firm.

The motion for attorneys' fees came on for hearing before a justice of the Superior Court on July 2, 1990. The justice prefaced his decision by noting that he had been examining attorneys' bills over the past twenty-six years that he had been on the bench. After examining the time sheets submitted by Violet, the court ordered the town of Middletown to pay $3,000 of plaintiff's legal fees, which amount was significantly less than the total fees reflected on Violet's time sheets. The court also ordered the town to pay plaintiff's costs in the amount of $424.70. This total amount of $3,424.70 was paid by the town to plaintiff and Violet.

When Violet left Pearlman, Vogel & Violet to start her own firm, an arbitration hearing was held to determine any amounts that Pearlman, Vogel & Violet owed to her personally and which she claimed on behalf of clients. At the arbitration hearing, defendant allocated to Violet one-third of the $25,000 fee that plaintiff had paid to Pearlman, Vogel & Violet, that is, $8,333. Sometime thereafter, Violet refunded to plaintiff two checks totaling $8,333. Although the record is unclear concerning whether the reimbursement from the town of Middletown in the amount of $3,424.70 initially went to plaintiff or to Violet, the net result of the foregoing

transactions was that Violet refunded to plaintiff $8,333 and $3,424.70 was retained by Violet.

On March 19, 1992, plaintiff brought the instant action to recover $16,667, the balance of the $25,000 that she had paid to Pearlman, Vogel & Violet. She claimed that the fair and reasonable value of the legal services provided and costs advanced by the firm was only $3,424.70, the portion of her legal fees incurred in C.A. No. 89–0376 that the town of Middletown had been ordered to pay and which amount had in fact already been paid to Violet. The case was heard before another justice of the Superior Court sitting without the intervention of a jury.

The plaintiff testified that defendant had told her the $25,000 fee was a retainer and that he had never told her that it was a flat fee. She further testified that she had never agreed that the $25,000 fee was to be a flat fee.

The defendant testified that he went over the fee agreement with plaintiff and never told her that charges would be based on an hourly rate. He testified that he told plaintiff that $25,000 would be a minimum fee for his office to handle the case.

Called as a witness by plaintiff, Violet testified that she was plaintiff's principal attorney and that she (Violet) alone performed virtually all the legal services rendered on plaintiff's behalf, including legal research, drafting of pleadings, attending court proceedings, and attending conferences with other outside attorneys.

The defendant's version of the events precipitating this litigation differed considerably from that testified to by Violet. The defendant testified that he performed extensive research on plaintiff's behalf, wrote numerous memos to Violet regarding plaintiff's cases, held status conferences on plaintiff's case each workday morning between July 31, 1989, and December 15, 1989, spoke with plaintiff by telephone over twenty times regarding her case when Violet was out of the office, drafted and edited the amended complaint in C.A. No. 89–0376, and provided input on how to respond to opposition memos and motions. He also assigned other attorneys in the office to assist Violet on various aspects of plaintiff's cases or to handle matters themselves when Violet was unavailable. According to defendant's testimony, he personally spent over twenty-five hours working on plaintiff's cases.

Additionally defendant testified that he did not find out until almost a year after the fact that there had been a motion and hearing before the first justice relating to attorneys' fees for work performed on plaintiff's behalf. The motion for fees was filed by Violet after she had left Pearlman, Vogel & Violet, and defendant had not been notified beforehand of such motion or of the hearing on the motion. Eventually, defendant did have an opportunity to examine the affidavit and time sheets submitted by Violet in support of the motion for attorneys' fees. He testified that they did not contain any hours or charges (1) for work done on the case by himself, (2) for work done on the case by other attorneys at Pearlman, Vogel & Violet, (3) for work done on the case by the law clerk employed by Pearlman, Vogel & Violet, (4) for work done on the case by Violet herself between September 15, 1989, and January 1, 1990, and (5) for any work done by anyone, including Violet, in connection with the second action filed on plaintiff's behalf (C.A. No. 89–0497).

Each side presented expert witnesses who testified regarding a fair and reasonable attorneys' fee for the services performed by Pearlman, Vogel & Violet. The plaintiff presented testimony from an attorney who had practiced law in Rhode Island since 1968. He testified that in his opinion the fair and reasonable value of services provided, including costs, was either $2,937.35 or $4,156.10, depending on the time frame considered. He believed that the same results could have been obtained in substantially less time and without litigation. In formulating his opinion, plaintiff's expert considered only the work shown on Violet's time sheets, thus he did not account for any work performed by defendant, by other attorneys at Pearlman, Vogel & Violet, or for work performed in connection with the second action brought on plaintiff's behalf (C.A. No. 89–0497).

The defendant presented expert testimony from an attorney who had been practicing

law in Rhode Island since 1965. He testified that in his opinion, a minimum flat fee of $25,000 was fair and reasonable in light of the nature of the work involved. He stated that such a fee was reasonable on two distinct grounds: (1) because the number of hours he estimated to be involved in handling the matter, billed at what he considered to be an appropriate hourly rate, totaled more than $25,000, and (2) the result achieved, regardless of the number of hours expended, justified a $25,000 fee.

After each side had presented its case, the trial justice held that plaintiff had failed to prove by a preponderance of the evidence that $16,667 was not a fair and reasonable fee for the legal services provided when the factors set forth in Rule 1.5 of the Supreme Court Rules of Professional Conduct are considered. Rule 1.5 states that a lawyer's fee shall be reasonable and enumerates certain factors that are to be considered in determining the reasonableness of the fee. These factors, which were substantially contained in the client-fee agreement executed by both parties, include the time and the labor required, the novelty and the difficulty of the questions raised, the skill required to perform the legal services properly, the amount in controversy, the results obtained, and the time limitations imposed by the circumstances of the case. The trial justice concluded that a fee of at least $16,667 was fair and reasonable in the circumstances in light of the client-fee agreement and the evidence presented at trial.

The plaintiff appealed from the court's finding that $16,667 was a fair and reasonable attorneys' fee. Her brief contains a number of instances of alleged error. Additional facts will be furnished as may be needed in order to deal with specific issues.

I

■ The plaintiff argues that the decision of the motion justice on plaintiff's motion for payment of attorneys' fees in C.A. No. 89–0376 is binding on defendant in regard to the fair and reasonable value of services performed and the times reasonably necessary to perform such services. The trial justice in the instant action found that the elements of collateral estoppel and res judicata were not met and therefore declined to adopt the motion justice's findings. We find it unnecessary to determine whether the motion justice's decision should be afforded either collateral-estoppel or res judicata effect because any such claim concerning the applicability of these doctrines was clearly and unequivocally waived by plaintiff.

The following colloquy took place between the court and plaintiff's trial counsel:

"Counsel: [The court] also has before it as a full exhibit both the transcript of [the motion justice's] decision on fees, and as a full exhibit the judgment regarding fees. The court has—

"The Court: Is the plaintiff arguing that res judicata, or rather collateral estoppel operates with respect to [the motion justice's] determination on fees?

"Counsel: *I'm not going to argue either one to the court.* I'll suggest this. It's a full exhibit. My brother stipulated to the fact that it may be admitted as a full exhibit. It's before you with just as much weight as the testimony of [plaintiff's expert witness], and *I'm not going to argue that it's res judicata or that the principle of collateral estoppel applies to that decision and judgment.* I want to argue it to the court in a different way. *I think that the award of attorney's fees by a court is not binding on any agreement between the lawyer and his client. Their contract regarding compensation may be different, may be different in nature from the process by which a court assessed attorney's fees. They may be substantially different. And therefore, the award should not bind the lawyer.* * * * So what I suggest to the court is that at the very least it's compelling evidence of what the fee should be according to plaintiff's Exhibit 1, the contract in question.

"The Court: I didn't understand that that was the purpose for the admission in full of [the motion justice's] decision. What you're asking is that I consider a decision as [the motion justice's] expert opinion on the fees. I either have to consider it that way or I have to consider it legally as

having some collateral estoppel effect, don't I?

"Counsel: Absolutely, and I have argued to the court that you should consider [it] in the former light as his expert opinion regarding fees." (Emphasis added.)

It is difficult to imagine a more explicit waiver than that offered by plaintiff's counsel. Indeed, not only did counsel waive any collateral-estoppel/res judicata argument when specifically asked by the trial justice if he were relying on these principles, but he affirmatively argued that a court award of attorneys' fees is *not* binding on any agreement between the attorney and the client. As we stated in *Thomas v. Ross*, 477 A.2d 950 (R.I.1984), "[J]udicial economy dictates that the finality of the trial justice's decision be upheld and that we not permit appellants to profit by their tactical decision to [rely on one theory and forego reliance on a different theory] and then suffer a change of mind once the question has been decided against them." *Id.* at 953. Because the issue of the collateral-estoppel or res judicata effect of the motion justice's findings regarding attorneys' fees was clearly and unequivocally waived, plaintiff's argument that such decision is binding in the instant case is without merit.

## II

■ The plaintiff claims that if this court does not afford collateral-estoppel effect to the motion justice's findings, then at a minimum, his decision ordering the town of Middletown to reimburse plaintiff in the amount of $3,424.70 for attorneys' fees and costs should have been considered by the trial court as probative evidence of a fair and reasonable attorneys' fee for the services provided by defendant's law firm in the two actions commenced on plaintiff's behalf.[2] Our review of the record, however, discloses that the court was justified in disregarding these findings. The court found that the time sheets submitted by Violet in support of the motion for attorneys' fees did not contain any entries for work performed by defendant, for work performed by other attorneys at Pearlman, Vogel & Violet, and even for

some work performed by Violet herself. Moreover, the time sheets only reflected work performed on C.A. No. 89–0376. Nothing was presented to the motion justice relating to work performed or fees charged in connection with C.A. No. 89–0497. Thus the motion justice only considered time records and charges for a portion of the work that was actually performed by defendant's firm on behalf of plaintiff.

■ In reaching his decision, the motion justice relied extensively on his personal knowledge and experience as a judge and as a lawyer with respect to the reasonableness of attorneys' fees. In *Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co.*, 464 A.2d 741 (R.I.1983), we rejected the notion that a trial justice, because of his expertise as a lawyer and as a judge, could take judicial notice of regularly accepted methods of computing legal fees in commercial-collection matters. We held that a court could take judicial notice of only two categories of facts, one category being those facts generally known with certainty by all reasonably intelligent people in the community and the second category being facts that are capable of accurate and ready determination by resort to sources of indisputable accuracy. *Id.* at 742 (citing *McCormick's Handbook of the Law of Evidence* § 329–30 (2d ed. Cleary 1972)). Because a trial justice's knowledge of an accepted method of computing fees arose from his expertise as both a lawyer and a judge, such method of computing fees is by definition eliminated from either category of which a court should take judicial notice. 464 A.2d at 742–43.

Although the term "judicial notice" was not specifically used by the motion justice in his decision, his findings were based to a great extent on his personal observations regarding the amounts of time in which an attorney should be able to perform certain tasks. Such observations were based on a familiarity with lawyers' bills gained during twenty-six years on the bench. The motion justice's reliance on personal knowledge of attorney-billing practices was tantamount to the court's taking judicial notice of a subject that

---

2. The plaintiff concedes that the motion justice's    decision does not qualify as an expert opinion.

did not meet either of the criteria for the taking of such notice. *See id.*

We also note that the hearing before the motion justice was in regard to plaintiff's motion for attorneys' fees. The purpose of that hearing was to determine what portion, if any, of plaintiff's legal fees incurred with respect to C.A. No. 89–0376 the court would order to be paid by the defendants in that action. It is important to bear in mind that the purpose of the hearing was *not* to determine the fee plaintiff owed her attorneys pursuant to the client-fee agreement or to determine the reasonableness of such fee. The United States Supreme Court has recognized that "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Venegas v. Mitchell,* 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74, 84 (1990). Even plaintiff's own counsel recognized this principle. In a dialogue with the court in the instant action, counsel asserted:

> "I think that the award of attorney's fees by a court is not binding on any agreement between the lawyer and his client. Their contract regarding compensation may be different, may be different in nature from the process by which a court assessed attorney's fees. They may be substantially different. And therefore, the award should not bind the lawyer."

Thus the trial justice was justified, for a number of reasons, in not relying on the motion justice's findings with respect to the reasonableness of the fee defendant charged plaintiff.

## III

The plaintiff makes much of the contention that after the complaint was filed in C.A. No. 89–0376, the attorney for the town of Middletown discovered a problem with the underlying authority for the bonds, "which point was not even raised in the complaint that was filed," that called into question the legality of any bonds that might be issued pursuant to the approval of the bond referendum. The problem, according to the town's attorney, was the requirement contained in G.L.1956 (1988 Reenactment) § 17–11–1.1, as amended by P.L.1990, ch. 151, § 1, that when voting districts are combined for a special election, notice of the combined voting districts must be advertised in a newspaper of general circulation in the town no fewer than seven days before the election. The town had not placed such an advertisement until the day before the election and thus had not complied with the statutory requirement. After consulting with bond counsel, the town's attorney determined that any bond issue based on the improperly noticed election would be invalid. Shortly thereafter the town council voted not to issue any bonds pursuant to the approval of the bond referendum.

The plaintiff asserts that it is not clear whether the result achieved—the town's agreeing not to issue any bonds even though the bond referendum was initially approved by the voters—flowed directly from the lawsuit because the town's attorney asserted that the decision not to proceed with the bond issue was based on a consideration that was not even mentioned in the complaint. The clear implication of this assertion is that a fair and reasonable attorneys' fee should not take into consideration the result achieved if such result was not due to the legal services provided by defendant's firm.

The fatal flaw in this argument, however, is that the explanation proffered by the town's attorney for the decision not to proceed with the bond issuance, namely, noncompliance with § 17–11–1.1, *is* alleged in both the original and the amended complaints. In fact, not only is noncompliance with the statutory requirement alleged in paragraph 11 of both the original and the amended complaints but a photocopy of § 17–11–1.1 *with its notice requirement underlined* is attached as an exhibit to both complaints. Thus we reject any implication that the decision not to proceed with the bond issuance was unrelated to the legal services rendered by defendant's firm. In the instant action the trial justice properly considered the result achieved, one of the items enumerated in Rule 1.5 of the Rules of Professional Conduct, in her determination of the reasonableness of the fee.

## IV

In reaching her decision, the trial justice made a number of findings of fact and conclusions of law. She found that (1) the issues presented were apparently matters of first impression in Rhode Island, (2) the client-fee agreement was clear and unambiguous in its terms, (3) attorneys' fees were to be charged on an hourly basis against a retainer of $25,000, (4) defendant personally expended no fewer than twenty hours on the two cases, (5) Violet spent at least forty-nine hours on the two cases, (6) the time sheets submitted by Violet to the motion justice did not include time spent on the cases by other attorneys at Pearlman, Vogel & Violet, and did not include some time that Violet herself worked on the cases, (7) a minimum of seventy-six hours was expended on these cases by the firm of Pearlman, Vogel & Violet; at a rate of $150 per hour (the rate used by plaintiff's expert witness and a rate listed in the client-fee agreement), this computation amounted to $11,400, and (8) the $5,267 difference between this $11,400 and the $16,667 that plaintiff was effectively charged was well justified by the result achieved. The court took particular note that the result obtained was the vindication of the right to vote that directly affected 6,000 people and indirectly affected many more. Such right, the court noted, is fundamental and constitutional in dimension, and the result achieved was therefore substantial and important.

In making her determination, the trial justice found that plaintiff, defendant, Violet, and the two expert witnesses were all credible witnesses. The trial justice ultimately rejected parts of the testimony of plaintiff's expert witness because he based his opinion solely on the time sheets prepared by Violet and because he did not consider any of the other factors contained in Rule 1.5 for determining the reasonableness of a fee. The trial justice accepted the testimony of defendant's expert witness, except for his estimation of the number of hours expended on the two cases. She noted that defendant's expert had taken into account the complexity of the issues involved and the result obtained, both of which are factors enumerated in Rule 1.5. While noting that defendant's expert had testified that an appropriate hourly rate for the services provided was over $200 per hour, she explained that even at the lower hourly rate employed by plaintiff's expert, the $16,667 fee was fair and reasonable.

The plaintiff alleges that the trial justice erred (1) in admitting certain expert testimony, (2) in her factual findings, and (3) in her application and conclusions of law.

Rule 702 of the Rhode Island Rules of Evidence governs the admissibility of expert testimony. It provides that:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

The trial justice, over plaintiff's objection, permitted defendant's expert witness to state his opinion regarding a fair and reasonable attorneys' fee for the services provided by defendant's law firm. The plaintiff claims this testimony should have been excluded because defendant's expert did not rely on the client-fee agreement in forming his opinion.

This court will not disturb a trial justice's decision regarding the admissibility of expert testimony unless it finds that the justice abused his or her discretion. *Frias v. Jurczyk*, 633 A.2d 679, 683 (R.I.1993). We believe that any deficiency in this expert's testimony went to the weight to be accorded to the testimony, not to its admissibility. *See State v. Morales*, 621 A.2d 1247, 1250 (R.I. 1993). In fact, the trial justice, who was the trier of fact in this case, did not adopt this expert's opinion concerning the number of hours expended on the case, nor did she adopt the hourly rate used by this expert in formulating his opinion. We find no abuse of discretion in the trial justice's permitting defendant's expert witness to testify.

The standard of review of the findings of fact of a trial justice sitting without a jury is extremely deferential. *Cerilli v. Newport Offshore, Ltd.*, 612 A.2d 35, 39 (R.I. 1992). This court will not disturb the find-

ings of the trial justice unless he or she has misconceived or overlooked relevant and material evidence or was otherwise clearly wrong. *Id.; Pereira v. Tellier*, 583 A.2d 523, 524 (R.I.1990). The determination by a trial justice of mixed questions of law and fact is entitled to the same deference as are his or her factual findings. *Cerilli*, 612 A.2d at 39. Applying this standard to the findings and conclusions of the trial justice, we are of the opinion that she did not misconceive or overlook relevant and material evidence, nor was she otherwise clearly wrong.

We have carefully considered the plaintiff's remaining claim of error and find it to be without merit. For the reasons stated, the judgment of the Superior Court is affirmed. The plaintiff's appeal is denied and dismissed. The papers in the case may be remanded to the Superior Court.