Richard A. SKOLNIK

v.

Charles R. MANSOLILLO et al.

No. 2002–49–Appeal.

Supreme Court of Rhode Island.

June 16, 2003.

Richard Pacia, Esq., Pawtucket, for Plaintiff.

Richard Riendeau, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG and FLAHERY, JJ.

## OPINION

FLAHERTY, Justice.

This case comes before us on the appeal of the defendants, City of Providence, by and through City Treasurer Stephen T. Napolitano, and Charles R. Mansolillo (Mansolillo), individually and in his capacity as city solicitor for the City of Providence (city or defendants). They appeal from a judgment entered in the Superior Court granting the plaintiff, Richard A. Skolnik (Skolnik or plaintiff), attorney's fees and interest for services rendered to the Employees' Retirement System of the City of Providence (board). The defendants also appeal from the decision denying their counterclaim seeking reimbursement for overpayment to Skolnik. The city contends that the trial justice erred in granting the plaintiff attorney's fees because under the Providence Home Rule Charter the board was not authorized to retain its own lawyer separate from the city solicitor. For the reasons set forth below, we sustain the appeal in part and deny it in part. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

In 1990, the board hired plaintiff as its legal counsel to represent it in various lawsuits involving the city. In 1992, this contract was renewed until June 30, 1993. After that date, plaintiff continued to represent the board. However, at some point thereafter, the city disputed the board's authority to retain Skolnik and refused to remit the balance owed for services rendered in connection with several cases. The cases pertinent to this appeal include: [1]

---

1. The Superior Court initially granted attorney's fees for eight cases in its decision entered on September 13, 2001. Only seven of those cases were listed in the final judgment entered on October 3, 2001 and appealed from herein. Following Skolnik's motion to clarify and/or reconsider, the trial justice granted attorney's fees in three more cases in a decision entered on December 11, 2001. Although counsel provided an amended judgment with plaintiff's brief, a final amended judgment incorporating that decision was not entered into the record. Nonetheless, defendants appeal the decision entered on December 11, 2001. However, our decision upholds only cases listed in the final judgment.

*City of Providence v. Employees Retirement Board,* P.C. 90–2119;

*Mansolillo v. Employees Retirement Board,* P.C. 93–5277;

*City of Providence v. Employee Retirement Board,* 749 A.2d 1088 (R.I.2000); [2]

*Retirement Board v. Cianci,* P.C. 96–1179;

*Retirement Board v. Cianci,* 722 A.2d 1196 (R.I.1999); [3]

*Retirement Board v. City of Providence,* P.C. 96–6227;

*Retirement Board v. City of Providence,* P.M. 97–2080;

*Almagno v. Municipal Employees Retirement System,* P.C. 90–6851;

*Orabona v. Employees Retirement Board,* C.A. 96–049P;

*Picard v. City of Providence,* C.A. 98–95M;

*Ahearn v. City of Providence,* C.A. 98–95M.[4]

Skolnik was paid by the city for his services until February 3, 1997. He continued to represent the board on certain matters after that date, but was not compensated. Mansolillo testified at trial that he had ordered the city controller not to approve any further invoices from Skolnik. Mansolillo also testified that Skolnik never had sought payment for services that were not authorized by the board. Skolnik testified that he was never informed why his bills were not paid, and that he filed suit after Mansolillo failed to respond

to letters in which he sought payment for his services.

The defendants' refusal to remit full payment for services rendered by Skolnik was based in part on a 1992 ordinance enacted by the Providence City Council (city council). The ordinance, ch. 92–48 (ordinance), designated the city solicitor to serve as the legal advisor to the board. Thus, it was defendants' position that the board lacked the authority to retain Skolnik.

Relying on this Court's decision in *Retirement Board of the Employees' Retirement System of Providence v. City of Providence,* 666 A.2d 810, 812 (R.I.1995) (*Retirement Board II*),[5] the trial justice concluded that Skolnik was entitled to attorney's fees in eleven cases. The defendants timely appealed.

To fully understand the impact of this ordinance on the board's authority to retain outside counsel, it is necessary to review the board's complex and tortured litigation history.

## II

### Pertinent History

The board was created in 1923 following the General Assembly's enactment of P.L. 1923, ch. 489, entitled "An Act to Provide for the Retirement of Employees of the City of Providence" (the act). The act set forth "a comprehensive system of contributions, benefits, and regulations relating to

---

**2.** This represents the consolidated appeal of the two previously listed cases, *City of Providence v. Employees Retirement Board,* P.C. 90–2119 and *Mansolillo v. Employees Retirement Board,* P.C. 93–5277.

**3.** This represents the appeal of the previously listed case, *Retirement Board v. Cianci,* P.C. 96–1179.

**4.** *Picard v. City of Providence,* C.A. 98–95M and *Ahearn v. City of Providence,* C.A. 98–95M were consolidated in United States District Court under C.A. 98–95M.

**5.** This case is designated as *Retirement Board II. Retirement Board of the Employees' Retirement System of Providence v. City Council of Providence,* 660 A.2d 721 (R.I.1995) (*Retirement Board I*) is discussed later in this opinion.

pensions to be paid to firefighters, police officers, and civilian employees of the city." *Betz v. Paolino,* 605 A.2d 837, 838 (R.I. 1992). The act, as amended by P.L.1981, ch. 359, § 1, stated in pertinent part:

"Sec. 3. Retirement Board. (1) The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this act are hereby vested in a retirement board. The retirement board shall from time to time establish rules and regulations for the administration and transaction of the business of the retirement system, and shall perform such other functions as are required for the execution of this act.

" * * *

"(4) The retirement board shall have the authority to appoint a legal advisor of the board who shall be an attorney authorized to practice by the Rhode Island Supreme Court." P.L.1923, ch. 489, § 3, as amended by P.L.1981, ch. 359, § 1.

Furthermore, "[t]he * * * act granted to [the board] the powers and privileges of a corporation. P.L.1923, ch. 489, § 2. The retirement system was therefore established as an independent entity placed under the management of a board that has the powers of a corporation." *Retirement Board II,* 666 A.2d at 812.

■ However, in 1980 the city adopted a Home Rule Charter (charter), which designated the board as a board of the city subject to the legislative authority of the city council. *Id.* The charter, in § 908, provides:

"The powers and duties of the retirement board shall be, without limitation, the following:

(1) To establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction;

(2) To report annually in detail to the city council * * *." *Retirement Board II,* 666 A.2d at 812 (quoting Providence Home Rule Charter § 908 (1980)).

Section 1404 of the charter provides that the charter " 'shall be deemed to have superseded all other acts * * * applicable to the City of Providence which are inconsistent with this Charter.' " *Retirement Board II,* 666 A.2d at 812. Thus, "if § 908 of the charter, which describes the retirement board, is inconsistent with the retirement act, then the retirement act is superseded by the provision of § 908." *Retirement Board of the Employees' Retirement System of Providence v. City Council of Providence,* 660 A.2d 721, 727 (R.I.1995) (*Retirement Board I* ). The board's authority "is now derived from the Home Rule Charter, not the retirement act." *Retirement Board II,* 666 A.2d at 812 (quoting *Retirement Board I,* 660 A.2d at 728).

On December 11, 1992, the city council approved the ordinance, which provided that "the 'City Solicitor shall be the legal advisor and attorney for the [board].' [Thus] [t]he retirement board could no longer appoint a 'legal advisor' pursuant to P.L.1923, ch. 489, § 3(4), as amended by P.L.1981, ch. 359, § 1." *Retirement Board II,* 666 A.2d at 812. *See also* Providence, R.I., Ordinance 1992, ch. 92–48. The enactment of the ordinance eventually led to this Court's ruling in *Retirement Board II,* a case involving the same parties before us. A discussion of that case will aid this Court in its disposition of this matter.

In *Retirement Board II,* the city appealed from a Superior Court order allowing Skolnik to continue representing the board in six specific cases. *Retirement Board II,*

666 A.2d 810–11. The city sought to enjoin Skolnik from representing the board after the ordinance was adopted, arguing that the contracts for Skolnik's services were void and unenforceable. *Id.* at 811. The Superior Court determined that the board and the city were in conflict on several cases then in active litigation. *Id.* It allowed Skolnik to represent the board in those matters, ruling that "the city solicitor would not be able 'properly [to] represent the [board] in pending litigation in which the [board] and the [c]ity were on opposite sides of the issues presented or take adverse positions.'" *Id.* at 812. We affirmed. Although the board lost its status as a separate corporate entity following adoption of the Home Rule Charter, we concluded that it was not precluded from litigating those actions that were pending before the courts. *Id.* at 813. We ruled that the board had the authority to retain Skolnik's services in six specific cases, five of which were initiated while he had a valid contract with the board.[6] Furthermore, despite the fact that the other case was initiated shortly after the contract period ended, "[s]ince the board was authorized to hire its own counsel during [the contract period] * * * it was also authorized to appoint Skolnik as its legal representative in those actions [commenced after the ordinance was adopted] whose factual underpinnings arose while the contract between Skolnik and the retirement board was legally enforceable." *Id.* This Court also ruled, "in those actions where the interests of the [board] conflict with those of the city, Skolnik may continue to represent the [board]. It must be noted, however, that the retirement board may hire outside counsel only in exceptional circumstances, such as the instant case." *Id.*

In the case before us at this time, the trial justice employed the reasoning of *Retirement Board II* to conclude that Skolnik was entitled to attorney's fees in the eleven cases noted above. She reasoned that Skolnik had represented the board in those cases because the city solicitor had conflicts of interest identical to the conflicts presented in the six cases cited in *Retirement Board II.* Moreover, the trial justice stated, "since each case either originated in, or has its factual underpinnings from, the time when Skolnik was validly retained by the [board], it is apparent that the Court's prospective ruling concerning his continued representation of the [board] in a limited capacity applies to each of them."

On appeal, defendants argue that the board lost its capacity to litigate or retain counsel independent of the city after the Home Rule Charter was adopted. Although this Court in *Retirement Board II* permitted the board to retain outside counsel in six specific cases, defendants argue that the "exceptional circumstances" that existed in those matters are not present in the eleven cases at issue here. Thus, defendants contend that the trial justice erred in finding for plaintiff.

### III

#### Standard of Review

■ "An order of the Superior Court will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Retirement Board II,* 666 A.2d at 811. Furthermore, it is well settled that "our review of the findings of fact [made by] a trial justice sitting without a jury is extremely deferential." *Laverty v. Pearlman,* 654 A.2d 696, 704 (R.I.1995).

---

6. One of those cases was initiated prior to the adoption of the ordinance.

Thus, this Court will not disturb the findings of the trial justice "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Cabral v. DuPont*, 764 A.2d 114, 115 (R.I.2001) (per curiam) (quoting *Harris v. Town of Lincoln, 668 A.2d 321, 326 (R.I.1995)* ).

## IV

## Analysis

We are mindful that there has been a frequent and contentious history of litigation involving the Employees' Retirement System and the city. This Court has recently attempted to "bring to an end this decade long litigation," but recognizes that parties to the various lawsuits have at times relied on a confused interpretation of our previous holdings on these matters. *See City of Providence v. Employee Retirement Board of Providence*, 749 A.2d 1088, 1101 (R.I.2000). The plaintiff in this case likewise has misconstrued our holding in *Retirement Board II*. We expect that our clarification of that holding not only will resolve the issue at bar, but also will end the incessant litigation stemming from the actions of the city and the board.

In *Retirement Board II*, this Court upheld a Superior Court order permitting Skolnik to continue representing the board in six specific matters. In upholding that order, this Court was mindful of our previous ruling in *Retirement Board I*. At the outset we reiterate that:

> "[t]he retirement board's status as an independent corporate entity did not survive its incorporation into the [Home Rule Charter]. * * * Rather, the retirement board became, like all city departments, boards, and commissions, subject to the legislative power of the city council delineated in charter § 401

because the retirement board's authority is now derived from the Home Rule Charter, not the retirement act." *Retirement Board II*, 666 A.2d at 812 (quoting *Retirement Board I*, 660 A.2d at 728).

Thus, when we held that the board was "[not] precluded from commencing those actions against the city *that are now pending in the courts*" *Retirement Board II*, 666 A.2d at 813 (emphasis added), we did so because the six cases before us presented "exceptional circumstances" that allowed us to overlook the 1992 ordinance designating the city solicitor as the legal counsel for the board and the board's resulting lack of standing. *Id.* First, we found that the board was authorized to hire Skolnik pursuant to a contract that the parties entered into prior to adoption of the ordinance. *Id.* "Although the city sought to have the contract declared void and unenforceable, we affirmed the Superior Court's finding that this contract was valid." *Id.* (citing *City of Providence v. Skolnik*, No. 93–325–A (order, entered March 17, 1994)). Furthermore, "[s]ince the board was authorized to hire its own counsel during that time, we [held] that it was also authorized to appoint Skolnik as its legal representative in those actions whose factual underpinnings arose while the contract * * * was legally enforceable." *Retirement Board II*, 666 A.2d at 813.

Thus, we affirmed "the Superior Court's decision in allowing the retirement board, through its own counsel, to pursue its actions against the city of Providence in the courts." *Retirement Board II*, 666 A.2d at 813. However, that ruling was not prospective; rather, it pertained to six matters addressed in the order, "certain of which *are presently on appeal* in the Supreme Court of the State of Rhode Island

and others which *are presently pending* in the Superior Court for the State of Rhode Island * * *." *Retirement Board v. City of Providence,* P.C. 93–2771 (order, entered October 4, 1993). (Emphasis added.) Thus, in affirming that order entered on October 4, 1993, our ruling in *Retirement Board II* pertained only to the six cases then before us. It was not intended to serve as an invitation or inducement for still more litigation.

In *Retirement Board II,* this Court also stated that "in those actions where the interests of the retirement board conflict with those of the city, Skolnik may continue to represent the [board]." *Retirement Board II,* 666 A.2d at 813. However, our ruling on that basis also served to affirm the Superior Court order pertaining to six specific cases. That order stated that Skolnik "shall remain as the Retirement Board's lawyer *with respect to the aforesaid specific matters*" because of the "inability of the City Solicitor's office to properly and legally represent the said Retirement Board *in such pending litigation* in which [the parties] are on opposite sides and/or take adverse positions * * *." *Retirement Board,* No. 93–2771 (order, entered October 4, 1993). (Emphasis added.) Thus, *Retirement Board II* did not envision allowing the original six cases in that ruling to multiply into eleven more matters for which the board claims to have had the authority to hire plaintiff.

## V

### Cases in which the Board was Authorized to Retain Skolnik

■ In accord with our ruling in *Retirement Board II,* we hold that the board was authorized to hire outside counsel in only four cases at issue in this appeal. Those cases are *City of Providence v. Employees* *Retirement Board,* P.C. 90–2119; *Almagno v. Municipal Employees Retirement System,* P.C. 90–6851; *Mansolillo v. Employees Retirement Board,* P.C. 93–5277, and *City of Providence v. Employee Retirement Board,* 749 A.2d 1088 (R.I.2000).

Both *City of Providence v. Employees Retirement Board,* P.C. 90–2119 and *Almagno v. Municipal Employees Retirement System,* P.C. 90–6851 were commenced before the 1992 ordinance was passed. Skolnik was hired for those matters pursuant to a valid contract between plaintiff and the board. *See Retirement Board II,* 666 A.2d at 813. Thus, we affirm the Superior Court judgment awarding Skolnik attorney's fees for his representation in those two cases.

As discussed above, the board was also authorized to hire outside counsel in those matters that were pending at the time the Superior Court order reviewed in *Retirement Board II* was issued on October 4, 1993. Of the eleven matters at issue here, only *Mansolillo v. Employees Retirement Board,* P.C. 93–5277 (*Mansolillo I*) was one of the original six cases that were pending in the courts at that time. Although that case was commenced after the 1992 ordinance was passed, the board was authorized to appoint Skolnik as its legal representative in that action because the factual underpinnings of that litigation arose while Skolnik's contract was legally enforceable. *Retirement Board II,* 666 A.2d at 813. The facts pertinent to *Mansolillo I* are as follows.

In 1989, the board approved various pension awards, including cost of living adjustments (COLAs) for city employees. *City of Providence,* 749 A.2d at 1090. The city subsequently sought declaratory relief to determine the validity of the board's action. *Id.* The Superior Court in *City of Providence v. Employees Retirement*

*Board,* P.C. 90–2119 upheld the board's pension and COLA grants and ordered the parties to submit an appropriate judgment for entry. *City of Providence,* 749 A.2d at 1090–91. However, the parties opted instead to reach a final settlement, and negotiations ensued between the city treasurer, the City of Providence, the director of administration, and the board. The parties agreed to a consent judgment, which was approved and entered as a consent decree in Superior Court on December 18, 1991. However,

> "[s]ome four months later on April 8, 1992, this court in an unrelated case, *Betz v. Paolino,* 605 A.2d 837 (R.I.1992), a case involving similar board action, held that the board lacked authority to modify or change city-employee retirement benefits * * *. This court reasoned in *Betz* that the board's actions amounted to 'legislation' by the board and were not authorized." *Mansolillo v. Employee Retirement Board of Providence,* 668 A.2d 313, 314 (R.I.1995) (*Mansolillo II* ).

It was this Court's ruling in *Betz* that "prompted the Providence City Council to have second thoughts about its earlier decision to have negotiated and agreed to the consent decree * * *." *Id.* at 315. Thus, in *Mansolillo I* the city challenged the board's action as *ultra vires,* and sought a declaration that the consent decree was invalid. *See Picard v. Members of the Employee Retirement Board of Providence,* 275 F.3d 139, 141 (1st Cir.2001). However, the factual underpinnings that gave rise to that litigation, namely, the adoption of the consent decree, occurred while the contract between Skolnik and the board was enforceable. Thus, we affirm that portion of the Superior Court judgment awarding Skolnik attorney's fees for his representation in that matter.

*Mansolillo I* gave rise to two appeals, only one of which is now before us. That appeal, *City of Providence v. Employee Retirement Board of Providence,* 749 A.2d 1088 (R.I.2000), was not yet pending in this Court on October, 4, 1993. However, the factual underpinnings of that case also arose while the contract between Skolnik and the board was enforceable. The appeal, as consolidated with the original consent decree case, *City of Providence v. Employees Retirement Board,* P.C. 90–2119, also concerned the controversy over passage of the consent decree itself. Thus, we also affirm that portion of the Superior Court judgment regarding *City of Providence v. Employee Retirement Board of Providence,* 749 A.2d 1088 (R.I. 2000), an appeal of one of the six original cases before us in *Retirement Board II.*

## VI

### Cases in which the Board was not Authorized to Retain Skolnik

■ We vacate the portion of the Superior Court order awarding attorney's fees to plaintiff in the seven remaining cases because the trial justice's findings were "clearly erroneous." *Cabral,* 764 A.2d at 115. In her decision, the trial justice awarded plaintiff attorney's fees in part because "each case either originated in, or has its factual underpinnings from, the time when Skolnik was validly retained by the [board]." The lynchpin of the trial justice's decision was her finding that most cases "concerned a consent decree that the city and the board had negotiated in 1989 * * *." However, the trial justice made an erroneously broad interpretation of how "factual underpinnings" were defined in *Retirement Board II.* Under *Retirement Board II,* "factual underpinnings" pertained to the events that gave rise to the alleged injury that prompted the litigation. Thus, while the trial justice correctly noted

that the cases at issue were somehow related to the 1991 consent decree, she incorrectly concluded that that tenuous relationship was sufficient to meet the "factual underpinnings" standard in *Retirement Board II,* as explained below.

In *Retirement Board of the Employees Retirement System of Providence v. Cianci,* 722 A.2d 1196 (R.I.1999), this Court heard the appeal of the Superior Court's decision in *Retirement Board v. Cianci,* P.C. 96–1179 (Israel, J.). These are the fourth and fifth matters listed above in this appeal and are known collectively as the funding cases. The board and individual retirement system members filed a complaint alleging that the city failed to pay into the retirement fund an amount that its official actuary had recommended. *Cianci,* 722 A.2d at 1197. At issue was whether the city council may fund part of the pension system on an annual basis and fund the COLA provisions pursuant to the 1991 consent decree on a pay-as-you-go basis. However, what provoked this litigation was the plaintiff's allegation that the city insufficiently funded the retirement system during the fiscal year 1995. *Id.* Thus, the "factual underpinnings" that gave rise to that litigation in 1996 did not occur while Skolnik's contract was legally enforceable.

In the sixth case at issue on appeal, *Retirement Board v. City of Providence,* P.C. 96–6227, Skolnik was hired by the board to seek a declaratory judgment with respect to its fiduciary duties to report a summary of fiscal transactions to the city council. That litigation was prompted by this Court's ruling in *Retirement Board I,* where we held that the "board's power and duty to administer the retirement system under § 908 do not *require* that the * * * board invest pension funds," nor is such authority inherent in the board. *Retirement Board I,* 660 A.2d at 729. Because

that case was decided in 1995, the factual underpinnings that gave rise to *Retirement Board v. City of Providence,* P.C. 96–6227 did not occur while Skolnik's contract was enforceable.

In *Retirement Board v. City of Providence,* P.M. 97–2080, Skolnik represented the board on behalf of members of the retirement system who purportedly were denied benefits owed to them under the 1991 consent decree. At issue was whether the city was authorized to adopt an ordinance requiring twenty five years of service before Class A employees could collect certain benefits, whereas only twenty three years of service were required under the consent decree. That ordinance was enacted on August 1, 1995. *See* Providence, R.I., Ordinance 1995, ch. 95–17. Thus, the factual underpinnings that gave rise to that case did not occur while the contract between plaintiff and the board was enforceable.

In *Orabona v. Employees Retirement Board,* C.A. 96–049P, the plaintiff was a city employee who purchased service credit to qualify for a pension. The purchases were approved in 1995 by the board, which subsequently also approved plaintiff's application for a pension. However, the city controller was advised that the board lacked the authority to sell the service credits, and he was ordered not to pay plaintiff Orabona's benefits. The plaintiff in that matter sought injunctive relief, claiming that he had a right to begin collecting his pension as of November, 1995. Again, the factual underpinnings that gave rise to this case did not occur while the contract between plaintiff and the board was legally enforceable.

The last two cases at issue, *Picard v. City of Providence,* C.A. 98–95M and *Ahearn v. City of Providence,* C.A. 98–95M, are known as the collective bargaining cases. In those cases, the plaintiffs were

employees who sued the city, claiming that they were entitled to COLA increases pursuant to the 1991 consent decree and certain collective bargaining agreements (CBAs). *Picard,* 275 F.3d at 142. The plaintiffs challenged various municipal ordinances that had placed the amount of plaintiffs' COLA benefits below the levels established under the CBAs. *Id.* Because those ordinances were passed beginning in 1995, the factual underpinnings that gave rise to that litigation did not occur while the contract between plaintiff and the board was enforceable.

## VII

### Conclusion

For the foregoing reasons, the defendants' appeal is denied and dismissed with respect to *City of Providence v. Employees Retirement Board,* P.C. 90–2119; *Almagno v. Municipal Employees Retirement System,* P.C. 90–6851; *Mansolillo v. Employees Retirement Board,* P.C. 93–5277, and *City of Providence v. Employee Retirement Board,* 749 A.2d 1088 (R.I.2000). The appeal is sustained with respect to the remaining seven matters, and we vacate that portion of the Superior Court judgment that is inconsistent with our decision in this case.

It also follows that the city may be entitled to a refund or set-off pursuant to its counterclaim for those cases in which we hold that the retirement board was not authorized to hire outside counsel. Thus, we vacate that portion of the Superior Court decision denying defendants' counterclaim to the extent that defendants may be owed a refund in light of this ruling. However, based on the record before us, we are unable to calculate the amount defendants are owed under their counterclaim, if any, or the amount plaintiff is owed for his representation in the four cases above. Consequently, we vacate the decision denying defendants' counterclaim and remand this case to the Superior Court with instructions to hold an evidentiary hearing in order to determine fees or reimbursements owed, if any, and then to enter a judgment consistent with the results of that hearing and with this opinion.