**CUMBERLAND FARMS, INC.**

v.

**STATE of Rhode Island, DEPARTMENT OF TRANSPORTATION, by and through its Director, William D. ANKNER.**

No. 2002–482–Appeal.

Supreme Court of Rhode Island.

March 24, 2004.

William Mark Russo, Esq., for Plaintiff.

Charles D. Wick, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff in this case, Cumberland Farms, Inc. (plaintiff or Cumberland Farms), appeals from a Superior Court judgment awarding it $8,020 in damages as compensation from the State of Rhode Island Department of Transportation (defendant or DOT) for the taking of plaintiff's property by eminent domain. The plaintiff asserts that this monetary award does not justly compensate it for the value of its property. We directed both parties to appear before this Court and show cause why the issues raised in this appeal should not summarily be decided. No such cause was shown, and we proceed to decide the appeal at this time.

The following facts are not disputed. The plaintiff is the owner of a Gulf gasoline station (the property) located at Apponaug Four Corners (the intersection) in the city of Warwick. As early as 1993, DOT notified plaintiff that a portion of the property might be taken in connection with improvements to the intersection (the project). DOT's early design for the project required the relocation of four of plaintiff's gasoline pump islands on the property. Accordingly, DOT made preliminary estimates of the value of these facilities if they were taken in connection with the project.

During this same time, Cumberland Farms was subject to a Rhode Island Department of Environmental Management (DEM) mandate to replace its underground storage tanks serving the gasoline pumps no later than December 23, 1998. In connection with this mandate, plaintiff intended to relocate its gasoline pumps at the same time that it replaced the underground storage tanks. The plaintiff contended that DOT should participate in its plan to move the pumps because DOT intended to take the property where the pumps were located anyway, and therefore in connection with the condemnation, DOT would be responsible for the cost of relocating them. Accordingly, Cumberland Farms sought "coordination" with DOT, requesting that it acknowledge its intent to take the portion of the property where the gasoline pumps were located before the December 23 deadline for complying with the DEM mandate. From the time plaintiff received notice of the proposed condemnation until the time the pump islands were relocated in 1998, Cumberland Farms engaged in numerous discussions with DOT requesting that the relocation of the pump islands be coordinated with the environmental upgrades.

Despite these discussions, DOT consistently refused to confirm that the final plan for the project would require the pump islands to be relocated. As late as October 1, 1998, DOT's legal counsel informed Cumberland Farms that it could not confirm that the portion of the proper-

ty containing the pumps would be condemned as part of the project. To comply with the environmental upgrades required by DEM, Cumberland Farms went ahead and relocated the pump islands.

Thereupon, on September 22, 1999, DOT filed a notice of taking of a portion of plaintiff's property in the land evidence records in the City of Warwick. On or about September 27, 1999, DOT offered plaintiff $28,790 to acquire 1,552 square feet of the property, a two-year temporary construction easement for 3,799 square feet, a permanent aerial easement of 855 square feet and a permanent easement of three square feet.

On July 25, 2000, plaintiff filed a petition for assessment of damages pursuant to G.L.1956 chapter 6 of title 37. Cumberland Farms sought reimbursement for the cost of relocating the gasoline pumps, asserting that the project made the relocation necessary. A jury-waived trial was held in the Superior Court. The trial justice concluded that the value of the property that was taken by DOT on September 22, 1999, was $36,810 and entered judgment in favor of plaintiffs for $8,020, plus interest. The plaintiff timely appealed.

■ Article 1, section 16, of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses without just compensation." *See also Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 910 (R.I.1987) (stating that the "ultimate concern in condemnation [is] * * * providing just compensation"). "It is well settled that the measure of damages to be awarded as just compensation for the condemnation of private property is the fair-market value of the property as of the date of the taking." *Serzen v. Director of the Department of Environmental Management*, 692 A.2d 671, 673 (R.I.1997) (citing *Ocean Road Partners v. State*, 612 A.2d 1107, 1110 (R.I.1992)); *Gorham v. Public Building Authority of Providence*, 612 A.2d 708, 712 (R.I.1992). The process governing the condemnation and compensation for taking by eminent domain by DOT is set forth in chapter 6 of title 37, entitled "Acquisition of Land." In particular, that chapter provides that title to property taken by eminent domain is vested in the acquiring authority as of the date that authority files a statement of acquisition in the office of the recorder of deeds or the town clerk. Section 37–6–14. In this case, the statement of acquisition was filed on September 22, 1999.

■ The findings of a trial justice, sitting without a jury, are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or unless the trial justice misconceived or overlooked material evidence. *Skolnik v. Mansolillo*, 826 A.2d 91, 95 (R.I.2003). There is nothing on the record that would lead us to conclude that the date of taking should be anytime other than the date DOT filed its statement of acquisition. Although it is true that the plaintiff and the defendant engaged in a series of negotiations concerning whether DOT should be responsible for relocating the pumps, it is equally clear that DOT had not exercised its condemnation authority at the time the plaintiff decided to proceed with its own relocation plans. If the plaintiff had not made the decision to relocate the pumps at that time, it risked noncompliance with the DEM mandate. At that point, DOT had not acted, nor had it induced Cumberland Farms to take or refrain from taking any action with respect to the gasoline pump islands. Accordingly, there is nothing in the record to support the plaintiff's allegations that DOT's actions resulted in a *de facto* taking, *e.g. Textron, Inc. v. Wood*, 167 Conn. 334, 355 A.2d 307, 314–15 (1974), or that DOT should be equitably estopped from refusing to pay the costs associated

with the gas pump island removal. *See A. Ferland & Sons, Inc. v. Zoning Board of Review of East Providence,* 105 R.I. 275, 278–79, 251 A.2d 536, 538 (1969).

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.